UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YOUNGEVITY INT'L, INC.,<br><br>                                Plaintiff,<br><br>v.<br><br>INNOV8TIVE NUTRITION, INC., et al,<br><br>                                Defendants. | Case No.: 22cv721-LL-WVG<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>**[ECF No. 8]** |

This matter is before the Court on the Motion of Defendants Innov8tive Nutrition, Inc. ("Innov8tive"), LaCore Nutraceuticals, Inc. ("LCN"), LaCore Enterprises, LLC ("LCE"), and LaCore Labs, Inc. ("LCL"), to dismiss the complaint of Plaintiff Youngevity International, Inc. ("Youngevity") for lack of jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).[1] ECF No. 8. The Court finds this matter suitable for determination on

---

[1] Plaintiff does not present arguments supporting the exercise of personal jurisdiction over Defendants LCN or LCL and does not object to their dismissal without prejudice on 12(b)(2). *See* ECF No. 9 at 7. Accordingly, LaCore Nutraceuticals, Inc. and LaCore Labs, Inc. are **DISMISSED WITHOUT PREJUDICE** for lack of personal jurisdiction. The Court's Order therefore addresses arguments pertaining to the remaining defendants, Innov8tive and LCE (together, the "Defendants").

1

the papers and without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7.1.d.1. Upon review of the parties' submissions and the applicable law, the Court **GRANTS** the Motion to Dismiss for the reasons stated below.

## I.     BACKGROUND

Plaintiff Youngevity brought this action on May 19, 2022, asserting claims under the Lanham Act, 15 U.S.C. § 1125, for false or misleading advertising, and for false advertising and unlawful conduct under section 17200 of the California Business & Professions Code ("UCL"). ECF No. 1 ¶¶ 46-180. Defendants filed the instant Motion to Dismiss Plaintiff's complaint in its entirety for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure. ECF No. 8. The Motion to Dismiss has been fully briefed. *See* ECF Nos. 8-10.

Plaintiff Youngevity is a network marketing company that operates under the laws of Delaware and has its principal place of business in Chula Vista, California. ECF No. 1 ¶ 2. Plaintiff develops and distributes dietary supplement products via "independent, direct-sellers known as 'distributors'" who market its products through "websites, media, trade shows, lectures, community events, local shops, and home meetings" and sell its products through "peer-to-peer relationships, e-commerce, and social media marketing." *Id.* ¶¶ 3-5. Plaintiff specializes in selling "high-quality dietary supplement products which consumers can ingest in liquid, powder, or capsule form." *Id.* ¶ 4.

Defendants Innov8tive, along with LCE, LCN, and LCL, are businesses based in the state of Texas. ECF No. 1. ¶¶ 7-12. Innov8tive's principal place of business is in Melissa, Texas. *Id.* ¶ 7. Plaintiff alleges that LCE purports to be a sales development and investment agency, that LCN purports to be a contract manufacturer of dietary supplements, sports nutrition, and personal care products, that LCL purports to be a full-service independent testing laboratory, that LCE is the parent company of both LCN and LCL (collectively, the "LaCore Entities"), and that Innov8tive is a network marketing company. *Id.* ¶¶ 7-12, 14. In particular, Plaintiff alleges that the LaCore Entities manufacture, package and distribute certain patch products marketed by Innov8tive that are "purported to provide consumers

with vitamins, minerals, and/or nutrients through a patch placed on the skin" based on the premise that "consumers would absorb transdermally the dietary ingredients directly through the skin." *Id.* ¶¶ 21-22, 31. Youngevity and Innov8tive are "direct competitors in that they both sell products advertised to contain vitamins and nutrients to consumers through independent distributors" and "therefore compete for the same target consumers[.]" *Id.* ¶ 33.

Plaintiff alleges two misrepresentations in Innov8tive's advertisements. First, it alleges that Innov8tive's claims that its patch products facilitate absorption of dietary ingredients through the topical patches applied to the skin are false. ECF No. 1 ¶¶ 51-53. Second, Plaintiff alleges that the claims made by Innov8tive's product labels, which purport to show the amounts of vitamins, minerals, nutrients, and percent daily values of each ingredient, are false. *Id.* ¶¶ 56-57. Plaintiff contends that, as a result of Innov8tive's misrepresentations and because Innov8tive markets its products directly to Youngevity distributors and customers, Plaintiff has lost distributors and customers to Innov8tive. *Id.* ¶¶ 33, 48, 49. Plaintiff further alleges that Defendants' practices deceive consumers [*id.* ¶ 138], have caused economic injury to Plaintiff [*id.* ¶ 139], and violate California law [*id.* ¶ 154]. Plaintiff seeks injunctive relief enjoining Defendants from making the alleged false claims, selling the patch products or any other topical products intended for transdermal administration of dietary supplements; exemplary or punitive damages; disgorgement of Defendants' profits earned as a result of the sale of the patch products; and costs and attorney fees related to this suit. *Id.* ¶¶ A-J.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(2), a party may move to dismiss a complaint for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). "Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (citing *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990)). If the Rule 12(b)(2) motion "is based on written materials rather than an

evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) (citing *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1127 (9th Cir. 2010)). While uncontroverted allegations in the complaint are taken as true, the court "cannot 'assume the truth of allegations which are contradicted by affidavit.'" *LNS Enters. LLC v. Cont'l Motors, Inc.*, 22 F.4th 852, 858 (9th Cir. 2022) (quoting *Data Disc., Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977)). Where both sides submit affidavits, conflicts over the statements contained in affidavits are resolved in the plaintiff's favor. *Id.* (quoting *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008)). "Additionally, any evidentiary materials submitted on the motion 'are construed in the light most favorable to the plaintiff[s] and all doubts are resolved in [their] favor.'" *Ochoa v. J.B. Martin & Sons Farms*, 287 F.3d 1182, 1187 (9th Cir. 2002) (quoting *Metro Life Ins. Co. v. Neaves*, 912 F.2d 1062, 1064 n.1 (9th Cir. 1990)).

### III. DISCUSSION

"Declarations and affidavits are functional equivalents" in the context of a motion to dismiss. *LNS Enters. LLC*, 22 F.4th at 858. Defendants' arguments are supported by two separate declarations by Jenifer Lynn Grace, the Corporate Secretary of Innov8tive, Manager of LCE, and the Corporate Secretary for the LaCore Entities. ECF Nos. 8-2, 10-1. Plaintiff's arguments are supported by the Declarations of Neil Spingarn, Lab Director for Eurofins SFA SN Special Analysis West [ECF No. 9-1] and Steve Wallach, CEO of Youngevity [ECF No. 9-2], as well as other exhibits [ECF No. 9-3]. Accordingly, and because only written materials are before the Court, the Court assesses whether Plaintiff's filings demonstrate facts that support a finding of jurisdiction rather than "resolving the factual disputes." *See Data Disc, Inc.*, 557 F.2d at 1285 (internal quotation omitted). While plaintiff need only make a prima facie showing of personal jurisdiction to overcome a 12(b)(2) motion to dismiss, "mere 'bare bones' assertions of minimum contacts with the forum or legal conclusions unsupported by specific factual allegations will not satisfy a

plaintiff's pleading burden." *Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007) (per curiam) (citations omitted).

### A. Personal Jurisdiction in this Case in Governed by Constitutional Minimums of Due Process

In this case, subject matter jurisdiction is predicated upon both a federal question and diversity of citizenship. Where subject matter jurisdiction is based on a federal question, "a court may exercise specific [personal] jurisdiction over a defendant if a rule or statute authorizes it to do so and the exercise of jurisdiction comports with the constitutional requirements of due process." *Fiore v. Walden*, 657 F.3d 838, 845 (9th Cir. 2011) (citing *Myers v. Bennett Law Offices*, 238 F.3d 1068, 1072 (9th Cir. 2001)). If, however, "there is no applicable federal statute governing personal jurisdiction, the district court applies the law of the state in which the district sits." *Dole Food Co. v. Watts*, 303 F.3d 1104, 1110 (9th Cir. 2002) (citing *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998)); *see also* Fed. R. Civ. P. 4(k)(1)(A). Where subject matter jurisdiction is based on diversity of citizenship, the court "applies the personal jurisdiction rules of the forum state provided the exercise of jurisdiction comports with due process." *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986) (citing *Haisten v. Grass Valley Med. Reimbursement Fund, Ltd.*, 784 F.2d 1392, 1396 (9th Cir. 1986)).

The Lanham Act does not contain any provision addressing personal jurisdiction. Furthermore, because California's personal jurisdiction rules are coextensive with federal due process requirements, "the jurisdictional analyses under [California] state law and federal due process are the same." *Dole Food Co.*, 303 F.3d at 1110 (quoting *Panavision*, 141 F.3d at 1320); *see also* Cal. Code. Civ. Proc. § 410.10. As such, the Court's analysis of personal jurisdiction is focused on federal due process.

### B. General Due Process Requirements for Personal Jurisdiction

Due process requires that a non-resident defendant has sufficient minimum contacts with the forum "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316

(1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). Personal jurisdiction takes two forms: general and specific. *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015) (citing *Boschetto*, 539 F.3d at 1016). "Unless a defendant's contacts with a forum are so substantial, continuous, and systematic that the defendant can be deemed to be 'present' in that forum for all purposes, a forum may exercise only 'specific jurisdiction – that is, jurisdiction based on the relationship between the defendant's forum contacts and the plaintiff's claim." *Yahoo! Inc. v. La Ligue Contre Le Racisme*, 433 F.3d 1199, 1205 (9th Cir. 2006) (en banc).

Plaintiff does not argue that Defendants' contacts with California are so substantial, continuous, and systematic that they can be subjected to general jurisdiction by this Court. Instead, Plaintiff argues that specific jurisdiction is proper. Therefore, the Court turns to the parties' arguments surrounding the exercise of specific personal jurisdiction over Defendants.

### C.  Imputed Personal Jurisdiction

Plaintiff alleges that, as a subsidiary of LCE, Innov8tive's contacts with the forum can be imputed to LCE for the purposes of evaluating personal jurisdiction because LCE is the alter ego and principal of Innov8tive, or because Innov8tive is the agent of LCE. ECF No. 9 at 23-27. Generally, "a parent-subsidiary relation-ship alone is insufficient to attribute the contacts of the subsidiary to the parents for jurisdictional purposes." *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1134 (9th Cir. 2003) (internal citations omitted). However, when two affiliated companies—typically, in a parent and subsidiary relationship—are not really separate entities, one company's forum contacts can be imputed to the other company. *See Ranza v. Nike*, 793 F.3d 1059, 1071-72 (9th Cir. 2015) (holding that the alter ego test may be used to extend personal direction between two companies regardless of which is the parent or subsidiary). "To satisfy the alter ego test, a plaintiff must make out a prima facie case (1) that there is such a unity of interest and ownership that the separate personalities of the two entities no longer exist and (2) that failure to disregard their separate identities would result in fraud or injustice." *Id.*

at 1073 (internal citation and quotation omitted). Furthermore, while the United States Supreme Court and the Ninth Circuit Court of Appeals have not set out a standard for finding that an agency relationship between two entities would sustain the exercise of specific jurisdiction, the Ninth Circuit has opined that, at minimum, a finding of an agency relationship would require that the principal "must have the right to substantially control" the agent's activities. *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1024-25 (9th Cir. 2017) (citing *Doe v. Unocal Corp.*, 248 F.3d 915, 926 (9th Cir. 2001) (per curiam); *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1232 (9th Cir. 2013)).

The first prong of the alter ego test requires a showing that one entity controls the other "to such a degree as to render the latter the mere instrumentality of the former." *Unocal*, 248 F.3d at 926 (internal quotation and citation omitted). "Total ownership and shared management personnel are alone insufficient to establish the requisite level of control" to establish an alter ego relationship. *Ranza*, 793 F.3d at 1073 (citing *Harris Rutsky*, 328 F.3d at 1135). A parent company may be involved in financing and macromanagement of a subsidiary without creating an alter ego relationship if the evidence does not demonstrate that the parent company "directs [the subsidiary's] routine day-to-day operations, and nothing suggests the entities failed to observe their separate corporate formalities." *Id.* at 1074-75. This is true even where "the parent company guaranteed loans for the subsidiary, reviewed and approved major decisions, placed several of its directors on the subsidiary's board, and was closely involved in the subsidiary's pricing decisions." *Unocal*, 248 F.3d at 928 (citing *Kramer Motors, Inc. v. British Leyland, Ltd.*, 628 F.2d 1175, 1177 (9th Cir. 1980)). Under California law, the Court may also consider other pertinent factors such as: commingling of funds and other assets; failure to maintain minutes or adequate corporate records, and the confusion of the records between two entities; identical equitable interest in both entities; shared directors and officers of the entities; the use of the same office or business location; employment of the same employees and/or attorney; failure to adequately capitalize an entity or the total absence of corporate assets and undercapitalization of an entity; and the use of a corporation as a mere shell,

instrumentality, or conduit for a single venture or the business of an individual or another corporation. *See Assoc. Vendors, Inc. v. Oakland Meat Co.*, 26 Cal. Rptr. 806, 814-15 (Cal. App. 1962) (enumerating a non-exclusive list of potential factors).

As mentioned above, though disputed by Defendants' affidavits, the Court's analysis focuses on Plaintiff's allegations regarding the alter ego test. *See Data Disc, Inc.*, 557 F.2d at 1285. Plaintiff alleges that LCE "through its ecosystem of companies effectively operates all facets of Innov8tive" and that LCE "has the authority to substantially control Innov8tive's commercial activities." ECF No. 9 at 26. Plaintiff alleges that "[i]n practice, Innov8tive appears to be nothing more than a shell operated by LaCore Enterprises, its director, CFO, and secretary." *Id.* In support of those claims, Plaintiff alleges that LCE owns between fifty and sixty percent of Innov8tive, that both companies operate out of the same office in Texas, both companies employ the same lawyer and law firm, that Terry LaCore is both the sole director and governing person of LCE as well as the sole director of Innov8tive, that Jenifer Grace is the Corporate secretary for both Innov8tive and LCE, and that the CFO of LCE has signed documents submitted to the Texas Secretary of State on behalf of Innov8tive. ECF No. 9 at 25-26. Plaintiff also alleges that LCE controls Innov8tive because Innov8tive has only one employee and because LCE provides certain management, consulting, accounting, and administrative services, pursuant to an agreement between the companies, which effectively means that LCE controls the day-to-day operations of Innov8tive and controls and directs its activities. *Id.* at 26. While Plaintiff addresses several factors relevant to the Court's alter ego analysis, its allegations, particularly those regarding the level of control that LCE exerts over Innov8tive, are too vague and conclusory to establish alter ego jurisdiction. Plaintiff merely asserts that there is a service agreement between LCE and Innov8tive which includes services which may be construed as day-to-day operations, and that Innov8tive has one employee. Such allegations do not show how LCE exercises actual control or direction of Innov8tive and fall short of the required showing of control "to such a degree as to render the latter the mere instrumentality of the former." *Ranza*, 793 F.3d at 1073. Likewise, shared office

space, shared officers, and partial ownership, without more, do not support a finding that there is unity of interest between LCE and Innov8tive. Moreover, Plaintiff has not alleged that Innov8tive and LCE have failed to observe their respective corporate formalities, and existence of a services agreement between the two companies suggests maintenance rather than erosion of such formalities. With the allegations currently before the Court, the weight of the evidence indicates that LCE and Innov8tive are not in an alter ego relationship. Because the first prong of the alter ego test has not been satisfied, the Court does not take up the "fraud or injustice" prong of Plaintiff's argument. *Ranza*, 793 F.3d at 1075 n.9 (citing *Unocal*, 248 F.3d at 928). Likewise, Plaintiff's argument that agency liability supports imputed personal jurisdiction fails because there has not been a showing that LCE substantially controls Innov8tive. *Williams*, 851 F.3d at 1024-25. Accordingly, the Court analyzes personal jurisdiction separately for Innov8tive and LCE.

### D.  Specific Personal Jurisdiction

Generally, for the Court to exercise specific jurisdiction over a defendant, "the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). The Ninth Circuit applies a three-prong test to analyze specific personal jurisdiction: (1) a defendant must purposefully avail itself of the privilege of conducting activities in the forum or purposefully direct its activities toward the forum; (2) the claim must arise out of the defendant's forum-related activities; and (3) the exercise of jurisdiction must be reasonable. *See Schwarzenegger*, 374 F.3d at 802. Courts analyze the first prong under purposeful availment for cases sounding in contract, and under purposeful direction for cases sounding in tort. *Id.* (citations omitted). If a plaintiff meets its burden to satisfy the first two prongs of the test, the burden shifts to the defendant to "'present a compelling case' that exercise of jurisdiction would not be reasonable." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985)). When a court looks to exercise specific jurisdiction over a defendant, the relevant time period for assessing potentially jurisdiction-conferring contact is "when the events that gave rise to the suit occurred." *Steel v. United States*, 813 F.2d 1545, 1549 (9th Cir. 1987).

### 1. Purposeful Availment or Direction

The first of prong of the Ninth Circuit's specific jurisdiction test requires a plaintiff to establish that a defendant either purposefully availed itself of the privilege of conducting activities in the forum state or purposefully directed its activities toward the forum state. *Schwarzenegger*, 374 F.3d at 802. The Court analyzes contract claims under purposeful availment, and tort claims under purposeful direction. *See id.* Trademark and false advertising claims are akin to tort claims and are therefore analyzed under purposeful direction. *See Panavision Int'l*, 141 F.3d at 1320-21 (applying purposeful direction analysis to federal and state trademark claims).

The effects test set out in *Calder v. Jones*, 465 U.S. 783 (1984) governs the Court's purposeful direction analysis. *Burri Law PA v. Skurla*, 35 F.4th 1207, 1213 (9th Cir. 2022). Under the *Calder* effects test, a plaintiff must show that a defendant (1) committed an intentional act, (2) expressly aimed at the forum state, that (3) causes harm the defendant knew was likely to be suffered in the forum state in order to show that a defendant purposefully directed its activities to that state. *Id.* (citing *Axiom Foods, Inc. v. Acerchem, Int'l, Inc.*, 874 F.3d 1064, 1069 (9th Cir. 2017); *Dole Food Co.*, 303 F.3d at 1111; *Calder*, 465 U.S. at 788-89.). It is not enough to show a defendant committed an intentional act with foreseeable effects in the forum state. While all three requirements of the *Calder* effects test must be met, the determinative question is whether the conduct in question was expressly aimed at the forum state. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1156 (9th Cir. 2006). Each is examined in turn below.

#### a. Intentional Act

"In the context of the *Calder* test, an intentional act is 'an external manifestation of the actor's intent to perform an actual, physical act in the real world, not including any of its actual or intended results.'" *Lindora, LLC v. Isagenix Int'l, LLC*, 198 F. Supp. 3d 1127, 1139 (S.D. Cal. 2016) (quoting *Washington Shoe Co. v. A-Z Sporting Goods, Inc.*, 704 F.3d 668, 674 (9th Cir. 2012)). This prong "focuses on whether an act was performed, not whether the act produced a particular result." *Id.*

Plaintiff alleges that Innov8tive sells its products through promoters, controls where its promoters sell products, controls promoters' use of marketing materials, and that Innov8tive has sold and shipped its products into California, where it has promoters, and where it has promoted and attended events. ECF No. 9 at 9. Because Innov8tive acted intentionally in developing and selling its products to promoters in California, the Court finds that Plaintiff has sufficiently alleged that Innov8tive committed an intentional act.

With respect to LCE, Plaintiff makes general allegations that "Defendants"—referring to Innov8tive and the LaCore Entities—"market and sell products to California consumers" including the patch products at issue in this action. ECF No. 1 ¶¶ 20-21. Further, that "the LaCore Entities are aware that Innov8tive markets and sells its products to consumers in California, and the LaCore Entities distribute the patch products to consumers in California." *Id.* ¶ 24. Plaintiff's allegations lump together either all Defendants as a whole—in the case of the first set of general allegations—or the LaCore Entities as a whole—in the case of the second set of general allegations—in a way that is inappropriate to assess personal jurisdiction. *See Calder*, 465 U.S. at 790 ("Each defendant's contacts with the forum State must be assessed individually."). The two sets of allegations, taken together, appear to acknowledge that Innov8tive markets and sells the patch products, and the LaCore Entities distribute the patch products, rather than all of the named Defendants taking part in the marketing and selling of products as suggested by the first set of allegations. Assuming, without deciding, that the second set of allegations can be understood to be specific to LCE, the Court finds that Plaintiff has sufficiently alleged that LCE committed an intentional act by distributing patch products.

### b. Express Aiming

The precise form of a court's express aiming analysis "varies from case to case and 'depends, to a significant degree, on the specific type of tort or other wrongful conduct at issue.'" *Picot*, 780 F.3d at 1214 (quoting *Schwarzenegger*, 374 F.3d at 807). However, express aiming generally requires a showing of "'something more' than 'a foreign act with foreseeable effects in the forum state.'" *Pakootas v. Teck Cominco Metals, Ltd.*, 905 F.3d

565, 577 (9th Cir. 2018) (quoting *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000)). Furthermore, the "[T]he mere fact that [a defendant's] conduct affected plaintiffs with connections to the forum State does not suffice to authorize jurisdiction." *Walden*, 571 U.S. at 291. This is true even when a defendant targets a plaintiff with strong connections to the forum state and there would be foreseeable harm suffered by the plaintiff in that forum. *See Axiom Foods, Inc.*, 874 F.3d at 1069-70 (citing *Walden*, 571 U.S. at 289). The proper analysis of express aiming, therefore, looks to whether a defendant's own contacts with the forum are jurisdictionally sufficient. *See Picot*, 780 F.3d at 1214.

In this case, Plaintiff alleges false advertising and mislabeling, so the Court examines whether Innov8tive or LCE expressly aimed its false advertising or mislabeling of Innov8tive's patch products at California. *Picot*, 780 F.3d at 1214. Plaintiff has not alleged that Defendants engaged in false advertising or marketing of the patch products prior to the issuance of a press release by Innov8tive announcing the launch in early 2020. Accordingly, the Court's assessment of express aiming, and Defendants' contacts and suit-related conduct, are limited to Defendants' actions subsequent to the launch of the patch products on March 19, 2020. *Steel*, 813 F.2d 1549.

Plaintiff alleges that the express aiming requirement is met because Innov8tive took substantial, consistent, and repeated actions to target the California market. ECF No. 9 at 12. Plaintiff makes several distinct arguments that Innov8tive expressly aimed its conduct at California: (1) that Innov8tive was registered to do business and maintained a registered agent in California until January 2021 [*id.*]; (2) that Innov8tive promoted, attended, and organized Innov8tive marketing meetings in California to sell products and solicit business in California [*id.* at 12]; (3) that Innov8tive targeted Youngevity through comparative advertising and targeting of its affiliates with foreseeable effects against Youngevity, which it knew to be in California [*id.* at 9, 13]; (4) that Innov8tive created websites for its California promoters to market, sell, and ship products into California [*id.* at 14]; (5) that Innov8tive directed its commercial activities toward California as evidenced by six percent

of its sales [*id.* at 13]; and (6) that Innov8tive entered into a business agreement with Zazzle—a California company—and encouraged its promoters to purchase marketing tools from Zazzle [*id.* at 14].

  Plaintiff's well-pleaded allegations and evidence establish an attenuated connection between Defendants and California at most, even when construed in Plaintiff's favor, because they fail to show that Defendants performed any suit-related actions directed at California. *See Walden*, 571 U.S. at 286 ("Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated contacts he makes by interacting with other persons affiliated with the State.'" (quoting *Burger King*, 471 U.S. at 475)). Plaintiff does not allege that Innov8tive itself falsely advertised or mislabeled its patch products in a way that was directed at California. Plaintiff's allegations that Innov8tive was registered to do business and had a registered agent in California until 2021 are unsupported as to how those circumstances are connected to its claims; its evidence that Innov8tive promoted, attended, and organized events in California are likewise outside the relevant time period and unrelated to the patch products in question—and therefore, unrelated to the claims at stake in this case—; its assertions that Innov8tive creates websites for its promoters is similarly unsupported by any more specific allegations, nor is there any evidence that such websites are expressly aimed at California; and it is unclear, because Plaintiff makes no more specific allegations, how Defendant's disputed relationship with Zazzle and the availability of Innov8tive branded marketing materials through Zazzle, shows that Innov8tive expressly aimed its advertising and labeling of patch products at California. Plaintiff alleges that its evidence shows that Innov8tive "direct[ed] promoters to purchase Zazzle marketing tools," [ECF No. 9-2 ¶ 21], but its supporting exhibit simply shows a page on Innov8tive's website that states "Print on Demand Marketing items are available through Zazzle. You can customize most items with your promoter information to kickstart your business" [ECF No. 9-3 at 111]. Nothing indicates that promoters were directed to purchase materials from Zazzle, that any of the materials available through Zazzle were directed at

California, or that the decisions of independent Innov8tive promoters—who are Innov8tive's customers and third parties to this suit—to purchase merchandise from Zazzle would show that Innov8tive expressly aimed its conduct at California.

As for the sales of Innov8tive patch products in California, the Court is similarly guided by the nature of Plaintiff's claims in this case. According to Plaintiff's allegations, Innov8tive is a network marketing company that sells products through independent distributors, known as promoters, that promote products through peer relationships, social media, and in-person meetings. ECF No. 9 at 8. Any individual can become an Innov8tive promoter by enrolling on its website, paying a membership fee of $49.95, and agreeing to be bound by Innov8tive's Statement of Policies and Procedures. *Id.* at 8-9. California residents have registered as Innov8tive promoters [*id.* at 9], and at least one Innov8tive promoter actively markets and sells Innov8tive patch products in California [ECF No. 9-2 ¶ 13]. Approximately six percent of Innov8tive's total sales are to customers in California. ECF No. 8-2 ¶ 4; 9 at 13. Nothing in Innov8tive's Statement of Policies & Procedures (the "SPP") directs its promoters to market or sell its products in California, restricts where promoters may sell their products within the United States, or dictates which products promoters must sell. *See* ECF No. 9-3 at 18-59 ("Exhibit E"). In other words, California residents may purchase and market any of Innov8tive's products in any forum. Furthermore, promoters are free to choose which of Innov8tive's products they purchase, market, and sell. Based on Plaintiff's allegations and evidence, it would be equally plausible that a resident in any other forum state could register to become a promoter and market Innov8tive's patch products exclusively toward California. The fact of any promoter's residency implies nothing about where or which of Innov8tive's products they market and sell. Even Plaintiff's evidence that a single Innov8tive promoter made Facebook posts promoting Innov8tive products that are tagged "in California" [*see id.* at 63-65 ("Exhibit G")] does not establish that the posts were directed at California because nothing suggests that those posts were directed specifically at California or people in California, as opposed to anyone in the United States with internet access. Nor are there

allegations or evidence showing that a post being tagged "in California" indicates that the person posting the content was physically present in California at the time. More importantly, that evidence says nothing about whether Innov8tive itself expressly aimed its false advertising or mislabeling of the patch products at California, only that an independent promoter made posts tagged "in California." In the same vein, actual sales of the product in California say nothing about whether Innov8tive itself expressly aimed its conduct at California because Plaintiff has not alleged that those sales were a result of Innov8tive's own actions rather than those of its independent promoters. Plaintiff's reliance on the privacy disclaimers on Innov8tive's and LCE's websites directed at California consumers is also misplaced; as they evidence nothing more than the maintenance of Defendants' passive websites, and the existence of the California Consumer Privacy Act of 2018, which requires specific practices applicable only to California consumers. *See Pebble Beach*, 453 F.3d at 1157 (finding that there is no personal jurisdiction if the owner of a passive website does nothing else to encourage residents of a forum state to visit the site). The Court's jurisdiction cannot be premised solely on the unilateral activity of the plaintiff or of third parties connecting the defendant to a forum. *Walden*, 571 U.S. at 285 (citing *Int'l Shoe*, 326 U.S. at 319). Accordingly, Plaintiff has not sufficiently alleged that Innov8tive expressly aimed its suit-related conduct at California.

Though the Court addressed Plaintiff's allegations regarding the California privacy disclaimer on LCE's website above, it also separately examines Plaintiff's allegations that LCE expressly aimed its conduct at California. Plaintiff argues that LCE purposefully directed its activities at California because it hired Vanessa Hunter, a California resident, as a consultant who attended and promoted Innov8tive products at various events in California, and because Ann Erlandsson, LCE's chief financial officer, is a California resident who has executed documents submitted to the Texas Secretary of State on behalf of both LCE and Innov8tive. ECF No. 9 at 15-16. Plaintiff's evidence that Hunter is involved with LCE is an undated testimonial statement by Heidi Whitehair, who is listed as the CEO of Innov8tive Nutrition on Hunter's website, stating that Whitehair has "been

working with Vanessa Hunter since August 2017" and that she has consulted with Innov8tive. ECF No. 9-3 at 81. This statement does not show express aiming by LCE because it does not show that Hunter was involved with LCE, that Hunter was involved with LCE or Innov8tive in the time period relevant to the Court's jurisdictional analysis, or that LCE expressly aimed its conduct—related to the claims in this case—at California. Likewise, the listing of Vanessa Hunter as a contact for LCE by zoominfo, a third-party service, does not speak to whether LCE expressly aimed its false marketing or mislabeling of patch products at California. Similarly, the presence of LCE's chief financial officer in California and the submission of documents to the Texas Secretary of State by that officer say nothing about whether LCE expressly aimed its conduct at California.

Without meeting its burden to show that Defendants' conduct was expressly aimed at California, Plaintiff cannot establish that Defendants purposefully directed their activities at California. *See Pebble Beach*, 453 F.3d at 1158, 1160. Because Plaintiff has failed to establish that any Defendant purposefully directed their activities at California, this Court may not exercise personal jurisdiction over any of the Defendants in this case. *See Schwarzenegger*, 374 F.3d at 802 ("If the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state"). Accordingly, the Court declines to analyze the remaining prong of the *Calder* test, or to expand on its analysis of whether Innov8tive or LCE's alleged contacts with California stem from their relationships with this litigation and with California itself, rather than with the Plaintiff or third parties. The Court finds that Plaintiff has failed to make a prima facie showing of personal jurisdiction for any Defendant because it has only made bare bones assertions of jurisdictional contacts with the forum, unsupported by specific factual allegations. *Swartz*, 476 F.3d at 766.

### E.     Jurisdictional Discovery

Although "[a] court may permit discovery to aid in determining whether it has in personam jurisdiction[,]" the court's broad discretion "will not be reversed except upon the clearest showing that denial of discovery results in actual and substantial prejudice to the complaining litigant." *Data Disc Inc.*, 557 F.2d at 1285 n.1 (internal quotation omitted).

Furthermore, "where a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by the defendants, the Court need not permit even limited discovery." *Pebble Beach*, 453 F.2d at 1160 (internal citation and quotation omitted). A court need not grant discovery based on "purely speculative allegations of attenuated jurisdictional contacts." *Getz v. Boeing Co.*, 654 F.3d 852, 860 (9th Cir. 2011).

In this case, the Court finds that the discovery Plaintiff seeks to support its arguments on alter ego or agency theories of jurisdiction would not change the jurisdictional analysis because it has not shown that either Innov8tive or LCE has sufficient jurisdictional contacts with California. As discussed above, Plaintiff's claim of personal jurisdiction appears to be based on bare allegations, and Defendants make specific denials of its allegations as the noted by the Court. Plaintiff's request for jurisdictional discovery would not alter the Court's analysis. Therefore, the Court declines to exercise its discretion to permit jurisdictional discovery.

### F. Leave to Amend

Although requests for leave to amend are generally granted with "extreme liberality," the Court considers the factors laid out in *Foman v. Davis*, 371 U.S. 178, 182 (1962) when considering whether to grant leave to amend: undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility. *See Brown v. Stored Value Cards, Inc.*, 953 F.3d 567, 574 (9th Cir. 2020). "Of the *Foman* factors, prejudice to the opposing party carries the most weight." *Id.* (citing *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003)). Additionally, the Court has discretion to dismiss a complaint without leave to amend where it grants a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction. *See Chirila v. Conforte*, 47 F. App'x 838, 843 (9th Cir. 2002).

Plaintiff requests leave to amend its complaint on the basis that it intends to "add the jurisdictional allegations," saying nothing more. ECF No. 9 at 31. Defendants respond that, "[e]ven considering the arguments Plaintiff made for the first time in its Opposition, and

inadmissible evidence, leave to amend would be futile." ECF No. 10 at 10. Firstly, Plaintiff "should have known that the lack of personal jurisdiction issue could be raised at a later point in the proceedings and should have known that [it] needed to state adequate facts in the complaint to support [its] contention, based on the effects test, that there was personal jurisdiction." *Chirila*, 47 F. App'x at 843. Secondly, the Court reviewed Plaintiff's complaint, as well as the jurisdictional allegations and evidence submitted in opposition to the Motion to Dismiss, under a particularly lenient standard. *See Ochoa*, 287 F.3d at 1187; *Data Disc Inc.*, 557 F.2d at 1285. Plaintiff has had the opportunity to present additional jurisdictional allegations, and the Court has reviewed those allegations, resolving all factual disputes in its favor. Despite that, Plaintiff failed to make out a prima facie case for personal jurisdiction over any Defendant, and requests an additional opportunity to bolster its allegations.

The Court finds that, based on Plaintiff's opposition and evidence already considered, further leave to amend is unwarranted because it would be futile. *Gompper v. VISX, Inc.*, 298 F.3d 893, 898 (9th Cir. 2002) (affirming denial of leave to amend where the district court "carefully considered and incorporated into its analysis any facts offered by plaintiffs, even those beyond the complaint."). Plaintiff has given no indication that it could amend its pleading to add additional facts establishing personal jurisdiction over any Defendant. *See Evans v. Peterson*, 141 F. App'x 540, 542 (9th Cir. 2005) (affirming denial of leave to amend for lack of jurisdiction where Plaintiff's arguments beyond the complaint revealed that amendment would be futile). Furthermore, because Plaintiff has had an opportunity to adduce additional jurisdictional evidence and allegations and has failed to make a prima facie case, the Court finds that granting Plaintiff leave to amend its complaint to cure its jurisdictional allegations would impose undue prejudice on Defendants.

\\\
\\\
\\\
\\\

## IV. CONCLUSION

In accordance with the above, the Court **ORDERS** as follows:

1. The Motion to Dismiss filed by Defendants Innov8tive, LaCore Enterprises, LaCore Nutraceticals, and LaCore Labs [ECF No. 8] is **GRANTED**.
2. Plaintiff's request for jurisdictional discovery is **DENIED**.
3. Plaintiff's request for leave to amend its complaint is **DENIED**.
4. Plaintiff's complaint is **DISMISSED**.[2]
5. The Clerk of Court is directed to close this case.

**IT IS SO ORDERED**.

Dated: March 22, 2023

_____
Honorable Linda Lopez
United States District Judge

---

[2] Dismissal under Rule 12(b)(2) is **without prejudice as to the merits of the case**. However, Plaintiff's complaint is dismissed **with prejudice to the extent that, for the purposes of this action, this Court does not have personal jurisdiction** over Defendants Innov8tive, LaCore Enterprises, LaCore Nutraceticals, and LaCore Labs.