UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

YOUNGEVITY INTERNATIONAL INC.,

Plaintiff,

v.

INNOV8TIVE NUTRITION, INC., LACORE ENTERPRISES, LLC, and DOES 1–10,

Defendants.

Case No.: 3:22cv721-LL-AHG

**ORDER:**

**(1) DENYING DEFENDANT LACORE ENTERPRISES, LLC'S MOTION TO DISMISS** [93]

**(2) DENYING DEFENDANT LACORE ENTERPRISES, LLC'S MOTION TO TRANSFER** [94]

**(3) GRANTING PLAINTIFF'S MOTION TO LIFT STAY** [89]

Before the Court are Defendant Lacore Enterprises, LLC's Motion to Dismiss Amended Complaint[1] [ECF No. 93] and Motion to Transfer Venue [ECF No. 94]. Also before the Court is Plaintiff's Motion to Lift Stay. ECF No. 89. The motions are fully briefed, and the Court deems them suitable for determination on the papers and without

[1] Plaintiff filed a Motion to File Response in Opposition to Defendant's Motion to Dismiss FAC under Seal at LCE's request. ECF No. 97. The Motion is **GRANTED**.

oral argument pursuant to Civil Rule 7.1. For the reasons below, the Court **DENIES** Defendant's Motion to Dismiss, **DENIES** Defendant's Motion to Transfer Venue, and **GRANTS** Plaintiff's Motion to Lift Stay.

## I. PROCEDURAL BACKGROUND[2]

On May 19, 2022, Plaintiff Youngevity International Inc. ("Youngevity") filed the instant action, alleging violations of the Lanham Act and unfair competition laws for false advertising. ECF No. 1. After this Court granted Defendants' Motion to Dismiss Plaintiff's Complaint for lack of personal jurisdiction without leave to amend [ECF No. 15], the Ninth Circuit reversed and remanded the action. ECF No. 22. After jurisdictional discovery, Youngevity filed its First Amended Complaint ("FAC") against Defendants Innov8tive Nutrition, Inc. ("Innov8tive), LaCore Enterprises, LLC ("LCE"), and Does 1 through 10, alleging same violations for false advertising. ECF No. 38. LCE moved to dismiss FAC for lack of personal jurisdiction. ECF No. 50. On February 1, 2025, Innov8tive filed a notice of bankruptcy. ECF No. 81. In light of Innov8tive's bankruptcy petition, this Court stayed the entire action, including denying LCE's Motion to Dismiss FAC without prejudice. ECF No. 82. On September 24, 2025, this Court granted Youngevity and LCE's Joint Motion to Partially Lift the Stay. ECF No. 88. Thereafter, Youngevity filed the instant Motion to Lift Stay and LCE filed the instant Motion to Dismiss and Motion to Transfer Venue. ECF Nos. 89, 93, 94.

## II. DISCUSSION

### A. LCE's Motion to Dismiss under Rule 12(b)(2)

#### a. Legal Standard

"When a defendant moves to dismiss for lack of personal jurisdiction [under Rule 12(b)(2)], the plaintiff bears the burden of demonstrating that the court has jurisdiction over the defendant." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). Where a

[2] The factual background of this case is summarized in a prior order [ECF No. 15] and will not be repeated.

state, like California, permits the exercise of personal jurisdiction so long as it comports with federal due process, courts ask whether the exercise of jurisdiction over a nonresident defendant "comports with the limits imposed by federal due process." *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014); Cal. Civ. Proc. Code § 410.10 ("A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States."). For a court to exercise personal jurisdiction over a nonresident defendant, due process requires that the defendant have "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted).

Where, as here, the court permits jurisdictional discovery but does not hold an evidentiary hearing, "the plaintiff need only make a prima facie showing of jurisdictional facts." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). While the plaintiff cannot "simply rest on the bare allegations of its complaint, uncontroverted allegations in the complaint must be taken as true." *Id*. (citations omitted). "Additionally, any evidentiary materials submitted on the motion 'are construed in the light most favorable to the plaintiffs and all doubts are resolved in their favor.'" *Ochoa v. J.B. Martin & Sons Farms, Inc.*, 287 F.3d 1182, 1187 (9th Cir. 2002) (quoting *Metro Life Ins. Co. v. Neaves*, 912 F.2d 1062, 1064 n.1 (9th Cir. 1990)); *see also Schwarzenegger*, 374 F.3d at 800 ("Conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor.").

b. **Analysis**

LCE moves to dismiss Youngevity's FAC for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). *See generally* ECF No. 93. Youngevity contends this Court has personal jurisdiction over LCE because LCE has sufficient minimum contacts with California or because Innov8tive's jurisdictional contacts can be imputed onto LCE based on alter ego, agency, and joint venture theories of liability. *See generally* ECF No. 98. This Court finds that it has personal jurisdiction over LCE based on

the agency theory and declines to address other bases at this time.

### 1. Agency Relationship

"[A] corporation can purposely avail itself of a forum by directing its agents or distributors to take action there." *Daimler AG v. Bauman*, 571 U.S. 117, 135 n.13 (2014). "Fundamental tenets of agency theory require that an agent 'act on the principal's behalf and subject to the principal's control.'" *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1024 (9th Cir. 2017) (quoting Restatement (Third) of Agency § 1.01 (2006)).

To establish its agency personal jurisdiction theory, Youngevity must show that LCE had the right to "substantially control" Innov8tive's activities. *Williams*, 851 F.3d at 1025. "Agency can be established in two ways: (1) the parent company must be shown to have moved beyond the establishment of general policy and direction for the subsidiary and in effect taken over performance of the subsidiary's day-to-day operations in carrying out that policy; or (2) the subsidiary is shown to perform services that are sufficiently important to the parent corporation that if it did not have a representative to perform them, the corporation's own officials would undertake to perform substantially similar services." *Masimo Corp. v. Wireless*, No. 19-CV-01100-BAS-NLS, 2020 WL 7260660, at *16 (S.D. Cal. Dec. 10, 2020) (internal quotations marks and citations omitted).

Here, Youngevity sufficiently alleges that LCE has taken over Innov8tive's day-to-day operations and "substantially controls" Innov8tive:

- "[O]n January 20, 2020, [LCE] and Innov8tive entered into a 'Sales Override Agreement' . . . LCE "prepared the agreement, Innov8tive did not have independent legal counsel review the agreement, and Innov8tive made no modifications" (FAC ¶ 50);

- The email addresses listed for Innov8tive (legal@innov8tivenutrition.com) and LCE (legal@lacore.com) on the Sales Override Agreement "are accessible only by identical [LCE] employees, and not by any Innov8tive employees. Thus, any notices sent under this agreement would reach only [LCE] employees" (*id.*);

- "[O]n January 20, 2020, [LCE] and Innov8tive entered into the Services Agreement . . . LCE "prepared the agreement, Innov8tive did not have

independent legal counsel review the agreement, and Innov8tive made no modifications" (*id.* ¶ 51);

- The email addresses listed for Innov8tive (legal@innov8tivenutrition.com) and LCE (legal@lacore.com) on the Services Agreement "are accessible only by identical [LCE] employees, and not by any Innov8tive employees. Thus, only [LCE] employees are entitled to notice under the agreement" (*id.*);

- "On February 14, 2020, Innov8tive entered into a License Agreement with Topicals2go. . . At that time, [LCE] was 51% owner in Innov8tive and 50% owner in Topicals2go" (*id.* ¶ 54). "Topicals2go had no office or address other than the Melissa, Texas office shared by [LCE]" (*id.* ¶ 71). "Barb Pitcock purportedly signed on behalf of Innov8tive in her role as 'CEO.' But Pitcock testified that she was not familiar with a company named Topicals2go and 'never heard of Topicals2go.' Similarly, the other owners of Innov8tive, the Whitehairs, never reviewed or saw the License Agreement" (*id.* ¶ 54);

- The License agreement "required Innov8tive to buy the patch products 'solely from a manufacturer approved by [Topicals2go] and delivered to a facility designated by Topicals2go'" (*id.* ¶ 55);

- "The address for notice to Innov8tive under the License Agreement is . . . legal@innov8tive.com email address which is only accessible by [LCE] employees" (*id.* ¶ 56);

- LCE "controls all other facets of Inno8tive, from product development, manufacturing, labeling, packaging, inventory, shipping, sale, payments, website, genealogy, and social media pages" (*id.* ¶ 58);

- "The Innov8tive website is controlled and managed by [LCE] through its employee Bart Longgood and through MarketVision" (*id.* ¶ 73);

- "The only way for Innov8tive to modify the Innov8tive website is for Innov8tive to contact [LCE] employee Bart Longgood" (*id.* ¶ 59);

- LCE and its affiliates and subsidiaries "created and controlled" certain aspects of Innov8tive, such as "Innov8tive's distributor policies and procedures," "Innov8tive's day to day financials," "Innov8tive's distributor compensation plan, including making all payments to those distributors," "on-boarding and off boarding [Innov8tive] employees and setting up payroll," "Innov8tive's websites, domains, and social media pages," "Innov8tive's warehousing,

inventory management, and shipping," and "Innov8tive's refund policy, shipping policy, and return policy" (*id.* ¶ 64);

- LCE's legal team "controls Innov8tive's marketing material by telling its CEOs what information they can disseminate related to Innov8tive," "has the sole responsibility for reviewing[,] approving the Innov8tive products' labeling for compliance with law[,] and deciding whether to add disclaimers to advertising material" (*id.*);

- "Innov8tive never paid any money directly to Fujisawa," a California company that "either produced the patch or obtained the patch for Defendants" (*id.* ¶ 68);

- LCE employs "individuals who control various aspects of Innov8tive," such as "Innov8tive's Chief Financial Officer," "Innov8tive's Secretary [who] assists in the control of Innov8tive's legal decisions," and each individual who "[a]rranges and organizes Innov8tive's events and travel," "provides operational support and services for Innov8tive," [a]cts as Innov8tive's human resources department," and "[a]cts as Innov8tive's marketing team by creating and designing Innov8tive marketing material and controlling Innov8tive's social media pages." (*id.* ¶ 80);

- "Innov8tive has only two employees who apparently have responsibility to train Innov8tive distributors and answer certain customer support inquiries" (*id.* ¶ 113);

- "Innov8tive operates out of [LCE's] office but pays no rent or utilities for using that space" (*id.* ¶ 111);

- "Innov8tive has no credit card but only has a debit card with $500 limit. It therefore . . . depends on [LCE] to cover any larger purchase or debt" (*id.*);

- "Innov8tive's shareholders did not elect the directors. Instead, [LCE], as the controlling shareholder, always ensured that [LCE] employees and officers maintained a majority interest on the board of directors" (*id.*);

- "Innov8tive's board of directors is required to appoint officers at their annual board meeting. However [LCE], through Terry LaCore and Jennifer Grace, appointed the officers" (*id.*); and

- "[LCE] employee [Donde] Via creates Innov8tive marketing material, has it approved by [LCE's] legal team, and then posts it on Innov8tive's social media platforms without anyone at Innov8tive having any role in that process. In June 2024, Innov8tive organized an event in San Luis Obispo, California . . . [LCE] employee Via created the flyer promoting that event and posted the flyer to the Innov8tive Facebook page" (*id.* ¶ 114).

Youngevity also submitted testimonies and documents that further support LCE's substantial control over Innov8tive. *See* ECF No. 98-1. For example, only LCE employees have credentials to access Innov8tive's bank accounts according to Innov8tive's 30(b)(6) representative, Jennifer Grace. Exh. K, Grace Dep. 27:20–24, 72:5–23, ECF No. 98-1.

The fact that Innov8tive, a company selling millions of dollars in product throughout the United States, had just two employees may suggest that it was fully dependent on LCE's employees for day-to-day management and operation. Thus, Youngevity has alleged sufficient facts to show that LCE's control over Innov8tive is "over and above" such that it purposefully disregards Innov8tive's independent corporate existence. Accordingly, the Court finds that Youngevity has adequately pled agency relationship between LCE and Innov8tive. Therefore, the Court now turns to whether there are minimum contacts to support the exercise of personal jurisdiction over LCE.

2. **Personal Jurisdiction**

Personal jurisdiction over a nonresident defendant may be either general[3] or specific. *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 582 U.S. 255, 262 (2017). Specific jurisdiction, the type at issue here, is appropriate when the following requirements are met:

> (1) The nonresident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting

[3] After *Daimler AG v. Bauman*, the agency personal jurisdiction theory is no longer available to establish general jurisdiction. *See Ranza v. Nike, Inc.*, 793 F.3d 1059, 1071 (9th Cir. 2015).

activities in the forum, thereby invoking the benefits and protections of its laws;

(2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

(3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802. While acknowledging the three-prong test, LCE argues only that Youngevity cannot satisfy the first prong and claims that "it need not address the latter two factors." ECF No. 93 at 9–10, 12 n.14. Therefore, this Court will deem them waived and will only address the first prong.

When evaluating the first prong of the specific jurisdiction test, courts use "purposeful availment" test for breach of contract claims and "purposeful direction" test for tort claims. *Schwarzenegger*, 374 F.3d at 802. Here, Youngevity alleges claims for false advertising under the Lanham Act and California's unfair competition laws. *See generally* FAC. Because these claims "sound in tort," the purposeful direction test applies here. *See e.g.*, *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1090–91 (9th Cir. 2023) (applying purposeful direction test for claims for false advertising and other "tort-like" claims); *Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 979 (9th Cir. 2021) (applying purposeful direction test for claims under the Lahmam Act and California unfair competition law).

A defendant purposefully directs its activities toward the forum if the defendant has "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011). Also known as the "effects" test based on the Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783 (1984), the test "focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum." *Id*. (quoting *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (en banc)).

In its FAC, Youngevity alleges that LCE and Innov8tive[4] expressly aimed their conduct at California by collectively procuring, marketing, selling, and shipping topical patch products to California:

- "[LCE], through LaCore Nutraceuticals, Lacore Growth Partners, and Topicals2go paid Fujisawa for the patch products." (FAC ¶ 69). Fujisawa was "[a California company that manufactured patch products" (*id.* ¶ 67),
- Innov8tive's website www.Innov8tive.com, which consumers use to purchase the patch products, "is controlled and managed by [LCE], through its employee Bart Longgood and MarketVision" (*id.* ¶ 73),
- "[LCE] through its LaCore Payment Technologies, processes each payment, including payments received by California consumers" for credit card transactions on the Innov8tive website (*id.* ¶ 74),
- LaCore Logistics, one of LCE's subsidiaries or affiliates, "ships the patch products to the consumer, including California consumers" (*id.* ¶¶ 21, 75),
- LCE, "through MarketVision, also calculates Innov8tive's distributors' commission . . . and pay[s] Innov8tive's California distributors['] commissions owed" (*id.* ¶ 108),
- LCE "provides the payments owed to Innov8tive['s] distributors, including distributors in California" (*id.* ¶ 77),
- "[LCE] or its subsidiaries and affiliates, collected revenue from the manufacturing, labeling, packaging, holding, shipping, and sale of the patch products, including the sale and shipment of those products to California consumers" (*id.* ¶ 78),
- LCE "employs around seventy-five individuals, including at least one individual–its Chief Financial Officer–in California" (*id.* ¶ 12),
- LCE and Innov8tive, through LCE's compliance team, "monitor and control the behavior of Innov8tive's distributors, including Innov8tive's distributors in California (*id.* ¶ 107),
- LCE's "legal team sends notices to Innov8tive's distributors who they believe are in violation of Innov8tive's Policies and Procedures, including Innov8tive['s]

[4] LCE does not dispute that Innov8tive has sufficient minimum contacts with California. *See generally* ECF Nos. 93, 100.

distributors in California. Thus, [LCE] assumes responsibility for monitoring Innov8tive's California-based commercial activities (*id.* ¶ 12), and

- "[LCE] employee Via creates Inno8tive marketing material, has it approved by [LCE's] legal team, and then posts it on Inno8tive's social media platforms . . . [including] an event San Luis Obispo, California" in June 2024. (*id.* ¶ 114).

Moreover, Youngevity submitted deposition transcripts and documents demonstrating LCE took actions that expressly aimed at California. *See generally* ECF No. 98-1. For example, LCE's Rule 30(b)(6) designee, Jennifer Grace, testified that LCE was entitled to a certain percentage of each patch product sales in California. Ex. A, Grace Dep. 15:23–16:2, ECF No. 98-1.

LCE unsuccessfully attempts to minimize its contacts with California. *See* ECF No. 93 at 11–12. For example, LCE claims that "LCE does not determine what products are sold on Innov8tive's website (ECF No. 93 at 11) but does not dispute Youngevity's claim that LCE operates Innov8tive's website (FAC ¶¶ 73, 106), processes each credit card transactions on Innov8tive's website (*id.* ¶ 74), and ships the patch products to California consumers (*id.* ¶¶ 21, 75). Thus, this Court finds that LCE expressly aimed its conduct to California by operating Innov8tive's website, processing sales of the patch products via Innov8tive's interactive website, and causing the product to be delivered to California. *See e.g.*, *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1094 (9th Cir. 2023) (finding nonresident defendants who sold physical products via interactive website "expressly aimed" their conduct toward the forum where the defendants "in [their] regular course of business, sell[] a physical product via an interactive website and cause[] that product to be delivered to the forum"); *Sheisgracielou, LLC v. McBee Farms, L.C.*, No. 24CV1479-GPC(AHG), 2024 WL 4847386, at *4 (S.D. Cal. Nov. 19, 2024) (expressly aimed factor met by operating a website and selling the infringing products to California consumers, even if only made five sales in California). Construing these allegations and materials in the light most favorable to Youngevity, this Court finds that Youngevity sufficiently alleged that LCE purposefully directed its activities toward California.

As previously discussed, LCE does not dispute that Youngevity's causes of action

arise out of or relate to the LCE's forum-related activities and fails to carry its burden to "present a compelling case that the exercise of jurisdiction would not be reasonable." *Schwarzenegger*, 374 F.3d at 802 (9th Cir. 2004). Therefore, the Court finds that Youngevity has made a *prima facie* showing of jurisdictional facts sufficient to avoid dismissal at this stage. Accordingly, LCE's Motion to Dismiss for lack of personal jurisdiction is **DENIED**.

**B. LaCore's Motion to Dismiss under Rule 12(b)(3)**

When a defendant files a motion to dismiss for improper venue, the plaintiff has the burden of showing that venue is proper. *Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979). However, courts "must draw all reasonable inferences in favor of the non-moving party and resolve all factual conflicts in favor of the non-moving party." *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1138 (9th Cir. 2004).

Venue is proper in "(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b).

"[U]nder the Lanham Act, a substantial part of the events giving rise to the claims occur in any district where consumers are likely to be confused by the accused goods, whether that occurs solely in one district or many." *Lindora, LLC v. Isagenix Int'l, LLC*, 198 F. Supp. 3d 1127, 1147 (S.D. Cal. 2016) (internal quotation marks and citations omitted). Similarly, under California's unfair competition law, venue is proper "where the plaintiff encountered false advertising and purchased the product in question in the forum district." *O'Keefe v. Pick Five Imports*, No. 217CV08452SVWAFM, 2018 WL 4944997, at *3 n.2 (C.D. Cal. June 20, 2018); *Nilon v. Nat.-Immunogenics Corp.*, No. 12-CV-00930-BGS, 2012 WL 2871658, at *2 (S.D. Cal. July 12, 2012) ("venue is proper because the alleged events that led Plaintiff to purchase the product (*i.e.,* Defendant's alleged false

advertising) took place in California").

Here, Youngevity claims that venue is proper because Youngevity is located in this district and suffered injury in this district from Defendants' false advertising and unfair competition (FAC ¶¶ 109, 118). *See e.g.*, *Lindora, LLC v. Isagenix Int'l, LLC*, 198 F. Supp. 3d 1127, 1148 (S.D. Cal. 2016) (venue was proper where plaintiff operated in the district, the parties competed for customers in the district, and therefore, there was "a likelihood of customer confusion in this district"); *Crunchyroll, Inc. v. Pledge*, 2014 WL 1347492, at *10 (N.D. Cal. Mar. 31, 2014) ("Venue is also proper because [plaintiff] is located in San Francisco and suffered the alleged injuries in San Fransico."). Therefore, the Court finds that venue is proper in this district under 28 U.S.C. § 1391(b)(2).

Accordingly, LCE's Motion to Dismiss for improper venue is **DENIED**.

**C. LCE's Motion to Transfer Venue**

LCE argues that transfer is warranted either under 28 U.S.C. § 1412 ("Section 1412") or 28 U.S.C. § 1404(a) ("Section 1404(a)). *See generally* ECF No. 94. While agreeing that the action could have been brought in the Eastern District of Texas, Youngevity argues that transfer is not warranted because LCE cannot meet its burden to show that transfer is appropriate. ECF No. 95 at 5, 6 n.2.

**a. 28 U.S.C. § 1412**

"A district court may transfer a case or proceeding under title 11 [of the Bankruptcy Code] to a district court for another district, in the interest of justice or for the convenience of the parties." 28 U.S.C. § 1412. The party seeking to transfer venue has the burden of showing by a preponderance of the evidence that transfer is warranted. *Smolker*, 264 B.R. at 668.

Youngevity argues that Section 1412 does not apply here because this lawsuit is not "a case or proceeding under title 11." ECF No. 95 at 3. The Court agrees. Youngevity filed this lawsuit nearly three years before Innov8tive filed for bankruptcy. ECF Nos. 1, 81. Nevertheless, LEC argues that Section 1412 applies broadly to cases that are "related to" bankruptcy cases. ECF No. 94 3–4. In support of its argument, LEC cites *In re Fietz*, 852

F.2d 455 (9th Cir. 1988) and *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984). *Id*. at 4. While these cases explain how a case may be "related to" a bankruptcy case, they do not concern Section 1412. Instead, they address 28 U.S.C. § 1471(b) ("Section 1471), which dealt with jurisdiction, not venue. *See In re Fietz*, 852 F.2d at 456 ("Section 1471(b) confers on the district court jurisdiction over 'all civil proceedings arising under title 11 or arising in or related to cases under title 11.' 28 U.S.C. § 1471(b)(1982)"). Moreover, Section 1471 contained the words "related to" unlike Section 1412.

"[W]here Congress includes particular language in one section of a statute but omits it in another ..., it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983). Here, Congress chose to use the term "related to" in conferring jurisdiction but not in establishing the grounds for transfer of venue. Since LCE cites no binding precedent directing the Court to ignore the language used by Congress, the Court declines to apply Section 1412 given the facts of this case. *See e.g.*, *EnSource Invs. LLC v. Tatham*, No. 3:17-CV-00079-H-JMA, 2017 WL 3923784, at *4 (S.D. Cal. Sept. 7, 2017) (denying the argument that the case is "related to a bankruptcy action" where a defendant filed for bankruptcy months after the complaint was filed).

**b. 28 U.S.C. § 1404**

A district court may transfer an action to a different venue "[f]or the convenience of parties and witnesses" and "in the interest of justice," so long as the action could have been filed in the transferee district in the first instance. 28 U.S.C. § 1404(a). The purpose of Section 1404(a) is to "prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal citations and quotation marks omitted). The district court has broad discretion to determine whether to transfer, a transfer is inappropriate where it would "merely shift rather than eliminate the inconvenience." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). Thus, courts must make "individualized, case-by-case consideration of convenience and

fairness." *Van Dusen*, 376 U.S. at 622.

To determine whether to transfer a case, courts consider several factors, including:

> (1) the plaintiff's choice of forum, (2) convenience of the parties, (3) convenience of the witnesses, (4) ease of access to the evidence, (5) familiarity of each forum with the applicable law, (6) the availability of compulsory process to compel attendance of unwilling non-party witnesses, (7) any local interest in the controversy, and (8) relative court congestion and time to trial in each forum.

*Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1042 (S.D. Cal. 2023) (citing *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498–99 (9th Cir. 2000)). "This list is non-exclusive, and courts may consider other factors, or only those factors which are pertinent to the case at hand." *Martin v. Glob. Tel*Link Corp.*, No. 15-cv-00449-YGR, 2015 WL 2124379, at *2 (N.D. Cal. May 6, 2015).

**1. Plaintiff's Choice of Forum**

Generally, "a strong presumption exists in favor of a plaintiff's choice of forum." *Byler v. Deluxe Corp.*, 222 F. Supp. 3d 885, 904 (S.D. Cal. 2016). Therefore, "[t]he defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker*, 805 F.2d at 843; *see also Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947) ("[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."). LCE merely argues that it has shown that other factors weigh in favor of transfer and asks the Court to disregard Youngevity's original choice of forum. ECF No. 94 at 9–10. Therefore, LCE has not made a strong showing, and thus, this factor weighs against transfer.

**2. Convenience of the Parties**

This factor is neutral. While Youngevity is headquartered in this district, LCE and Innov8tive are based in Texas. No matter where the case proceeds, it seems likely that one side will be inconvenienced.

**3. Convenience of the Witnesses**

"Convenience of witnesses is often the most important factor in a § 1404(a) transfer

motion." *Costco Wholesale Corp. v. Liberty Mut. Ins. Co.*, 472 F. Supp. 2d 1183, 1193 (S.D. Cal. 2007). To demonstrate inconvenience to witnesses, "the moving party must name the witnesses, state their location, and explain their testimony and its relevance." *Id.* While LCE claims that "potential witnesses" are in Texas, it fails to identify who they are, where they are located, what their testimonies will be, and why such testimony is relevant. ECF No. 94 at 11. On the other hand, Youngevity states that a number of material witnesses reside outside of Texas and California. *See* ECF No. 95 at 8–9. For example, Innov8tive's former CEOs and COOs, whose testimonies will concern Innov8tive's and LCE's roles in the fraudulent patches scheme, now reside in Montana and Kansas. *Id*. However, it seems that most of the witnesses are based in Texas. Therefore, the Court finds that this factor weighs in favor of transfer.

**4. Ease of Access to Evidence**

"Ease of access to evidence is generally not a predominate concern in evaluating whether to transfer venue because advances in technology have made it easy for documents to be transferred to different locations." *Byler*, 222 F. Supp. 3d at 906. Youngevity contends, and LCE does not dispute, that the parties can exchange documents electronically and conduct proceedings remotely. ECF No. 95 at 10; *see generally* ECF Nos. 94, 101. Accordingly, the Court finds that both venues have ease of access to the evidence and witnesses. *See Heartland Payment Sys., Inc. v. Mercury Payment Sys., LLC*, No. C 14–0437 CW, 2014 WL 5695051, at *3 (N.D. Cal. Nov. 4, 2014) ("The weight of this factor has decreased . . . as technological advances in document storage and retrieval have greatly reduced the burden of transporting documents between districts." (citations omitted)). Thus, this factor is neutral.

**5. Familiarity of Applicable Law**

In addition to the claims under the Lanham Act, Youngevity alleges violations of California's unfair competition law. *See* FAC ¶¶ 234–72. Although courts within the Eastern District of Texas are competent to apply California law, "a California district court is more familiar with California law than district courts in other states." *Greenley v.*

*Kochava, Inc.*, 684 F. Supp. 3d 1024, 1043 (S.D. Cal. 2023). Therefore, this factor weighs against transfer.

**6. Compulsory Process for Unwilling Non-Party Witnesses**

A district court's subpoena power extends "(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person (i) is a party or a party's officer; or (ii) is commanded to attend a trial and would not incur substantial expense." Fed. R. Civ. P. 45(c)(1). LCE claims that many non-party witnesses are located in the Eastern District of Texas. ECF No. 94 at 11 n.2. However, LCE does not state whether there are additional non-party witnesses or where they are located. On the other hand, Youngevity names at least two non-party witnesses, Fujisawa Bristol Corporation and FITBrands LLC, that are located in California and Ohio. ECF No. 95 at 9. Thus, the transfer would not solve the compulsory-process issue for at least one identified non-party witness. Given that the parties have not begun non-jurisdictional discovery, the Court is mindful that there may be more non-party witnesses. Because neither forum would have compulsory process power over the non-party witness, this factor is neutral.

**7. Local Interest in the Controversy**

While California courts have an interest in protecting California-based Plaintiff, an equally persuasive argument exists that Texas courts have an interest in protecting Texas-based Defendants. Therefore, this factor is neutral.

**8. Relative Court Congestion**

"Courts in the Ninth Circuit consider both "the relative court congestion and time of trial in each forum." *Anderson v. Am. Airlines, Inc.*, No. 25-CV-03609-BAS-MSB, 2026 WL 2607622, at *7 (S.D. Cal. Sept. 2, 2026) (citations omitted). "This factor turns on whether 'efficient and expeditious administration of justice would be furthered' by transfer." *Baker v. Bayer Healthcare Pharms. Inc.*, No. 13–cv–00490–THE, 2015 WL 4456085, at *4 (N.D. Cal. July 21, 2015) (quoting *Sherar v. Harless*, 561 F.2d 791, 794

(9th Cir. 1977)). Neither party provides any statistics on the relative degrees of court congestion and time to trial in each venue. See e.g., *Walters v. Famous Transports, Inc.*, 488 F. Supp. 3d 930, 941 (N.D. Cal. 2020) (finding in favor of transfer because judges Northern District of California had a heavier workload than judges in the Northern District of Ohio). According to the Federal Court Management Statistics as of June 30, 2026, available at https://www.uscourts.gov/data-news/data-tables/2026/06/30/federal-court-management-statistics/n-a-1 (last visited September 23, 2026), Eastern District of Texas had 888 pending cases per judgeship while Southern District of California had 466 pending case per judgeship as of June 2026. Therefore, this factor weighs against transfer.

In sum, one factor weighs in favor of transfer, three weigh against, and four are neutral. Thus, LCE has not carried its burden to upset Youngevity's chosen forum. Accordingly, LCE's Motion to Transfer is **DENIED**.

**D. Youngevity's Motion to Lift Stay**

A court's "power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). "The power to grant a stay includes the inherent power and discretion to lift that stay." *Thomas v. Home Depot USA Inc.*, No. C06-02705 MJJ, 2007 WL 2140917, at *1 (N.D. Cal. July 25, 2007). A court may lift the stay when the circumstances "no longer satisfy the standard for issuance of a stay." *Alaska Survival v. Surface Transp. Bd.*, 704 F.3d 615, 616 (9th Cir. 2012). In other words, "[a] court may lift the stay if the circumstances supporting the stay have changed such that the stay is no longer appropriate." *Ho Keung Tse v. Apple, Inc.*, No. C 06-06573 SBA, 2010 WL 1838691, at *1 (N.D. Cal. May 5, 2010).

This Court stayed this action in light of Innov8tive's bankruptcy petition. ECF No. 82. The bankruptcy court has since modified the automatic stay to "authorize Youngevity take such actions as are necessary and convenient in [this action] and otherwise pursue claims which are not property of the bankruptcy estate to judgment against Inno8tive and LCE." Ex. A at 1–2, ECF No. 89-1. According to Youngevity, Innov8tive's bankruptcy

trustee does not oppose lifting the stay [ECF No. 89 at 1] and, in fact, prefers adjudication of this action [Declaration of Christopher Mosert ¶ 6, ECF No. 95-3]. Given these circumstances and Court's resolutions of LCE's pending motions, the Court finds that lifting the stay would serve judicial efficiency.

Accordingly, the Court Youngevity's Motion to Lift Stay is **GRANTED**.

## III. CONCLUSION

For the foregoing reasons, the Court **DENIES** LCE's Motion to Dismiss, **DENIES** LCE's Motion to Transfer; and **GRANTS** Youngevity's Motion to Lift Stay.

**IT IS SO ORDERED.**

Dated: September 30, 2026

Honorable Linda Lopez
United States District Judge