Peter A. Arhangelsky, Esq. (SBN 291325)
Civil Counsel Group LLP
200 E. Van Buren St., Suite 1000
Phoenix, AZ 85004
Email: Peter.Arhangelsky@civilcounsel.com

Eric J. Awerbuch, Esq. (Pro Hac Vice)
Youngevity International Inc.
9112 E. Verde Grove View, Suite 101
Scottsdale, AZ 85255
Phone: (248) 568-1856
Email: EAwerbuch@youngevity.com

ATTORNEYS FOR PLAINTIFF

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

YOUNGEVITY INTERNATIONAL INC., a Delaware Corporation,

Plaintiff,

v.

INNOV8TIVE NUTRITION, INC., a Texas Corporation; LACORE ENTERPRISES, LLC, a Texas Company; and DOES 1–10,

Defendants.

Case No. 3:22-cv-00721-LL-AHG

**PLAINTIFF YOUNGEVITY'S OPPOSITION TO DEFENDANT LACORE ENTERPRISES, LLC'S MOTION FOR RECONSIDERATION [ECF 115]**

Date: December 9, 2026
Judge: Hon. Linda Lopez
Courtroom: 14B

**PER CHAMBERS RULES, NO ORAL ARGUMENT UNLESS SEPARATELY ORDERED BY THE COURT**

**TABLE OF CONTENTS**


I. INTRODUCTION ..... 1
II. STATEMENT OF FACTS ..... 3
A. The Order and the Arguments LCE Already Made ..... 3
B. The Purported Related Proceedings ..... 5
C. LCE's Untimely Motion ..... 7
III. LEGAL STANDARD ..... 7
IV. ARGUMENT ..... 8
A. The Motion Is Untimely ..... 8
1. LCE missed the twenty-eight-day deadline ..... 8
2. The Court's conference rule does not excuse the delay ..... 9
B. LCE Offers No New Facts or Argument ..... 10
1. The Court already rejected LCE's estate-ownership argument ..... 10
2. Every "development" except the Dalton referral predates the Order ..... 11
3. The Dalton referral, which postdates the Order, does not merit reconsideration ..... 12
C. LCE Misrepresents the Purportedly Related Proceedings ..... 13
1. LCE's positions elsewhere contradict its Motion ..... 13
2. No other proceeding asks whether LCE is Innov8tive's alter ego for the conduct at issue here ..... 14
3. The Trustee has not changed her position on forum ..... 15
D. The Bankruptcy Court Will Decide Ownership, Which Does Not Warrant Transfer or a Stay ..... 16
1. The Bankruptcy Court will decide who owns certain theories, not where the claims are tried ..... 16
2. The alter ego facts are relevant in this case regardless of whether Youngevity owns an alter ego claim ..... 17
3. The Section 1404(a) factors still weigh against transfer ..... 18
4. Section 1412 still does not apply ..... 22
5. The Court should not reimpose the stay ..... 22
6. At most, any accommodation should be narrow ..... 24
V. CONCLUSION ..... 25

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*A.J. Indus., Inc. v. U.S. Dist. Ct.*, 503 F.2d 384 (9th Cir. 1974) ....19

*Airhawk Int'l, LLC v. Ontel Prods. Corp.*, 2020 WL 2306440 (S.D. Cal. May 8, 2020) ....8

*Continental Grain Co. v. Barge FBL-585*, 364 U.S. 19 (1960) ....19

*Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280 (9th Cir. 1977) ....18

*Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834 (9th Cir. 1986) ....20

*Dependable Highway Express, Inc. v. Navigators Ins. Co.*, 498 F.3d 1059 (9th Cir. 2007) ....24

*Eclipse Grp. LLP v. Target Corp.*, 2017 WL 2909717 (S.D. Cal. July 6, 2017) ....8

*EnSource Invs. LLC v. Tatham*, 2017 WL 3923784 (S.D. Cal. Sept. 7, 2017) .... 10, 18, 22

*F.T.C. v. Noland*, 2022 WL 901386 (D. Ariz. Mar. 28, 2022) ....9

*Flores v. DDJ, Inc.*, 2015 WL 738029 (E.D. Cal. Feb. 20, 2015) ....17

*Frederick S. Wyle Prof'l Corp. v. Texaco, Inc.*, 764 F.2d 604 (9th Cir. 1985) ....11

*Hooper v. County of San Diego*, 2020 WL 5294672 (S.D. Cal. Sept. 2, 2020) ....8–9

*In re Mitchell*, 206 B.R. 204 (Bankr. C.D. Cal. 1997) .... 17, 21–22

*In re PG&E Corp. Sec. Litig.*, 100 F.4th 1076 (9th Cir. 2024) ....23

*Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877 (9th Cir. 2000) .... 7–8, 11

*Landis v. N. Am. Co.*, 299 U.S. 248 (1936) ....23

*Lockyer v. Mirant Corp.*,
398 F.3d 1098 (9th Cir. 2005) .......................................................................23

*Madick v. Presidio, Inc.*,
2023 WL 4826187 (C.D. Cal. July 27, 2023)......................................................9

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*,
571 F.3d 873 (9th Cir. 2009) ........................................................................ 7, 22

*Matthews v. Lemonade Ins. Co.*,
809 F. Supp. 3d 1076 (S.D. Cal. 2025) ..............................................................24

*Sundance Image Tech., Inc. v. Inkjetmall.com, Ltd.*,
2005 WL 8173273 (S.D. Cal. Apr. 19, 2005) ........................................... 20, 22

*Williams v. Yamaha Motor Co.*,
851 F.3d 1015 (9th Cir. 2017) .......................................................................18

*Zamani v. Carnes*,
491 F.3d 990 (9th Cir. 2007) ..........................................................................9

*Zhluktsionak v. Reddit, Inc.*,
2026 WL 310176 (N.D. Cal. Feb. 5, 2026) ......................................................20

**Statutes**

28 U.S.C. § 157(b)(2)(H) ..................................................................................12

28 U.S.C. § 157(c) ..........................................................................................22

28 U.S.C. § 157(e) ..........................................................................................21

28 U.S.C. § 1404(a) ..................................................................................... 4, 18

28 U.S.C. § 1412 .......................................................................................... 4, 22

Tex. Bus. Orgs. Code § 21.223(b) ............................................................. 15, 21

**Rules**

Fed. R. Civ. P. 6(b) ...........................................................................................9

Fed. R. Civ. P. 32(a)(8).....................................................................................20

Fed. R. Civ. P. 54(b) ......................................................................................8–9

S.D. Cal. Civ. L.R. 7.1(i) ........................................................................ 1, 8, 10

S.D. Cal. Civ. L.R. 7.2 .......................................................................................10

Chambers Rules of Judge Linda Lopez ...................................................... 9–11

# I. INTRODUCTION

Defendant LaCore Enterprises, LLC ("LCE") asks the Court to reconsider its September 30, 2026 Order (ECF 108, the "Order") denying LCE's motion to transfer and lifting the stay. *See* ECF 115 (the "Motion"). The Motion is procedurally deficient because it is untimely and offers no new facts. Moreover, the Motion fails on the merits because the Court is acting within its discretion in litigating the case here, this Court has already invested substantial resources into this case, and it would not serve judicial efficiency to transfer.

Initially, the Court should deny the Motion because it is untimely. Civil Local Rule 7.1(i)(2) required LCE to move for reconsideration within twenty-eight days after the Court entered the Order, that is, by October 28, 2026. *See* ECF 108. That rule is not discretionary. LCE nonetheless filed the Motion on November 4. LCE never asked for an extension, and Youngevity never agreed to one. Courts in this District deny untimely motions for reconsideration, and this Court should do the same here.

Further, the Court should deny the Motion because the Motion offers no material new facts or law. LCE's original transfer motion, its reply in support, and its opposition to Youngevity's motion to lift the stay argued that the Trustee claims ownership of part of this case, that the Bankruptcy Court must decide who owns Youngevity's claims, and that this case belongs in the bankruptcy "home court." ECF 94 at 9[1]; ECF 99 at 3–5, 9; ECF 101 at 2–4. The Court already rejected those arguments. ECF 108 at 12–17. LCE now argues that there are five purported new developments: the *Dalton* transfer, the Agreed Order, the Trustee's adversary proceeding, the Utah action, and the referral of *Dalton* to the Bankruptcy Court. LCE concedes that the first three "came before the Order," ECF 115 ("Mot.") at 15:13–14, and the Utah action was filed on May 29, 2026, four months before the Order.

---

[1] Citations to specific pages in ECF documents refer to the page in the Court stamped header.

Thus, only the *Dalton* referral occurred after the Order, and LCE had briefed that request in May, months before the Order.

Regardless, even were those developments "new," they would not merit reconsideration. In those other proceedings, LCE has told the courts that the cases are unrelated to one another and that alter ego is irrelevant to the Trustee's case. LCE argued that the *Dalton* case should not be consolidated with the Trustee's adversary proceeding because the Trustee's adversary proceeding is an "unrelated Preference Action" that "relates to entirely different transactions" compared to the *Dalton* lawsuit. Ex. A at 7. LCE further told the Bankruptcy Court that the adversary proceeding is "a garden variety preference case" in which "[w]hether Grace or anyone else is an alter ego of the Debtor is irrelevant." Ex. B ¶¶ 17, 22. Most importantly, two days before LCE filed this motion, the Trustee moved to amend her complaint in the adversary proceeding to drop her request for a declaration that LCE is the Debtor's alter ego—the same relationship at issue in this lawsuit. *Compare* ECF 115-6 at Prayer ¶ c *with* Ex. F at Prayer. Curiously, LCE does not mention the amendment, which it does not oppose. Ex. Q ¶ 3.

Thus, a transfer or a stay would not promote judicial efficiency. Once the Bankruptcy Court grants the Trustee's unopposed amendment, no other proceeding will ask whether LCE is liable as Innov8tive's alter ego for the false advertising at issue here. Further, the Parties will litigate that issue in this lawsuit regardless of whether the Trustee owns Youngevity's alter-ego claim. LCE has preserved its personal jurisdiction defense. ECF 118 at 58. Even assuming the Trustee owns the alter-ego claim, Youngevity may still need to prove alter-ego for jurisdictional purposes. And this Court has already invested significant resources into that question by supervising jurisdictional discovery and issuing two orders on personal jurisdiction. *See, e.g.*, ECF Nos. 15, 27, 28, 29, 34, 37, 108. And on November 10, the Trustee asked the Bankruptcy Court only to decide which theories belong to the estate, conceding that Youngevity's direct claims are its own. Ex. L ¶ 10.

Meanwhile, Innov8tive has shut down, its witnesses have scattered, and its records remain under LCE's control. Awerbuch Decl. ¶ 10. Further delay helps only LCE, at Youngevity's expense.

## II. STATEMENT OF FACTS

### A. The Order and the Arguments LCE Already Made

Youngevity filed this action on May 19, 2022. ECF 1. The relationship between LCE and Innov8tive has since been before this Court. The Court originally dismissed the case for lack of personal jurisdiction. ECF 15. The Ninth Circuit reversed as to Innov8tive and remanded for jurisdictional discovery to determine whether Innov8tive and LCE were in an alter-ego or agency relationship. ECF 22. Under Magistrate Judge Goddard's supervision, Youngevity took jurisdictional discovery, including four jurisdictional depositions. *See, e.g.*, ECF Nos. 27, 28, 29, 34, 37. Youngevity then amended its complaint (ECF 38), and LCE moved to dismiss again, arguing that it is not Innov8tive's alter ego or principal. ECF Nos. 50, 61, 73.

While LCE's motion to dismiss was pending, Innov8tive filed for bankruptcy and the Court stayed the case on February 3, 2025. ECF Nos. 81, 82. In April 2025, LCE joined Youngevity in asking the Court to lift the stay so that the Court could decide LCE's motion to dismiss and LCE could move to transfer. ECF 83. The Court granted the motion to lift the stay on September 24, 2025. ECF 88.

Meanwhile, on September 10, 2025, the Bankruptcy Court entered an agreed order authorizing Youngevity "to take such actions as are necessary and convenient in [this action] and otherwise pursue claims which are not property of the bankruptcy estate to judgment against Innov8tive and LCE." ECF 89-1 at 2–3. That order followed an earlier one, approved by the Trustee, Youngevity, and LCE, ordering "that the stay does not apply to LaCore Enterprises, LLC." Ex. M. Thus, Youngevity filed another motion to lift the stay so that it could proceed on its claims in this Court, which LCE opposed. ECF Nos. 89, 99.

LCE also renewed its motion to dismiss and moved to transfer. ECF Nos. 93, 94. In the transfer motion, LCE argued that "at least some of the claims in this action belong to the Trustee" and that the estate "will benefit economically through a transfer, as the Trustee and its counsel will not have to participate in two different forums." ECF 94 at 9. On October 31, 2025, LCE filed two replies. In one, it asked the Court to "find, for the second time, that the weight of the evidence indicates that LCE and Innov8tive are not in an alter ego relationship." ECF 100 at 9. In the other, it submitted a declaration from the Trustee's counsel stating that the estate "asserts a property interest in Youngevity's claims in the lawsuit to the extent that LCE is liable for Innov8tive's actions under any alter-ego theory of liability." ECF 101-1 ¶ 7. LCE made the same arguments in opposing the motion to lift the stay, including that ownership of Youngevity's claims "must be determined by the Bankruptcy Court." ECF 99 at 3, 5, 9.

The Trustee, for her part, told the Court that the estate "opposes LCE's motions to dismiss and to transfer" and asked the Court "to reopen this lawsuit so that the Parties may proceed to judgment" here. ECF 95-3 ¶ 6. Her counsel signed that declaration on October 23, 2025—one week after the Trustee withdrew the special-counsel application on which, LCE now says, her position depended. *Id.* at 3; ECF 95-4.

On September 30, 2026, the Court denied LCE's motions to dismiss and transfer and lifted the stay. ECF 108. The Court found personal jurisdiction over LCE on an agency theory and declined "to address other bases." *Id.* at 3–4. It relied on the deposition transcripts and documents from jurisdictional discovery. *Id.* at 10. It held that Section 1412 does not apply to an action filed nearly three years before the bankruptcy. *Id.* at 12–13. Under Section 1404(a), it found that one factor favored transfer, three weighed against it, and four were neutral. *Id.* at 13–17. LCE answered on October 14, 2026, and filed an amended answer on November 12, 2026. ECF Nos. 111, 118. LCE denied that it is Innov8tive's alter ego, demanded a jury, and

preserved its personal jurisdiction defense "for all purposes, including trial and appeal." ECF 118 ¶¶ 110–112 & at 58.

**B. The Purported Related Proceedings**

***Dalton Lawsuit.*** *Dalton* is a fraudulent-transfer suit brought by a former Perfectly Posh executive to collect a default judgment against Perfectly Posh. ECF 115-2 at 1–2. The alter-ego issue in that case is whether Perfectly Posh was the alter ego of LCE, Terry LaCore, Jenifer Grace, and/or Anna Brooks. Ex. C at 12.[2] The case was transferred to the Eastern District of Texas and then referred to the Bankruptcy Court. ECF 115-2; ECF 115-4. On October 30, 2026, the Trustee moved to intervene, seeking to assert only "the estate's claims for fraudulent transfer and alter ego arising from the transfer of assets from the Debtor [Innov8tive] to PP Holdings Co. Inc." Ex. D ¶ 7. The Bankruptcy Court granted it. Ex. R.

In its May 2026 response to the Dalton plaintiffs' motion to refer the case to the Bankruptcy Court, LCE contended that *Dalton* and the Trustee's adversary proceeding are distinct. LCE argued that the adversary proceeding is an "unrelated Preference Action" that "relates to entirely different transactions," "has nothing [to] do with Ann Dalton," and should not be consolidated with *Dalton*. Ex. A at 7. LCE further argued that the issues in the bankruptcy case are "tangential" to the *Dalton* case and that none of the claims against the non-debtor defendants is core. *Id.* at 4–7.

***The Agreed Order on Dalton's Claims.*** On January 28, 2026, the Trustee filed a motion asking the Bankruptcy Court to determine whether Dalton's "fraudulent transfer claims and alter ego claims arising from the transfer of assets from the Debtor [Innov8tive] to PP Holdings ... constitute property of the bankruptcy

[2] Youngevity's opposition to LCE's motion to dismiss described *Dalton* as holding that LCE and Innov8tive were alter egos. ECF 96 at 2, 10. That description was imprecise. The *Dalton* court held that the plaintiff had stated a claim that LCE and its principals used Perfectly Posh as their alter ego to move Perfectly Posh's assets to Innov8tive. Ex. C at 14–16.

estate to which th[e] automatic stay applies." Ex. E ¶ 10. The resulting Agreed Order, signed by the Trustee and the *Dalton* plaintiffs, provides that the *Dalton* claims "arising from the transfer of assets from the Debtor to PP Holdings" are estate property, but that the claims "against non-debtor entities arising from the transfer of assets from the Perfectly Posh, LLC to the Debtor do not constitute property of the estate." ECF 115-3 at 3. LCE's motion quotes only the first half. Mot. at 12:4–8. The omitted half shows that claims against non-debtors such as LCE are not estate property merely because they involve the Debtor.

***The Trustee's adversary proceeding.*** On March 23, 2026, the Trustee's special counsel filed a "Complaint for Avoidance of Preferential Transfers." *See* ECF 115-5 at 2. On October 6, 2026, LCE moved to dismiss the second amended complaint, arguing that "[t]his is not even a fraud case. It is a garden variety preference case" and "[w]hether Grace or anyone else is an alter ego of the Debtor is irrelevant" because "[t]he Debtor is the alleged transferor." LCE also argued that alter ego "is not an independent cause of action, but a remedy." Ex. B ¶¶ 17, 22, 31.

On November 2, 2026, two days before LCE filed this motion, the Trustee, through special counsel, moved for leave to file a third amended complaint. The proposed complaint deletes the Trustee's request for a declaration that LCE is the alter ego of the Debtor. *Compare* ECF 115-6 at Prayer ¶ c *with* Ex. F at Prayer. That proposed Third Amended Complaint also pleads alter ego "not as an independent cause of action but as a means of enforcing, against Terry and LaCore Enterprises, the liability of PP Holdings and LaCore Payment to return estate property under 11 U.S.C. § 550." *Id.* ¶¶ 1, 68 & Prayer ¶ d. No one objected, and LCE does not oppose it. Ex. Q ¶¶ 2–3. LCE's motion does not mention it.

***The Trustee's ownership motion.*** On November 10, 2026, the Trustee asked the Bankruptcy Court to declare that the "alter ego, vicarious liability (principal/agency), and veil-piercing claims asserted in the Lawsuit to hold LaCore derivatively liable for the Debtor's conduct" are estate property. Ex. L ¶ 7 & at 5.

She also contends that Count Two "appears to be a derivative claim." *Id.* ¶ 8. She "does not assert" that Youngevity's "direct claims for its own competitive injury from the Debtor's alleged false advertising" are estate property. *Id.* ¶ 10. She does not ask to transfer this case or for the Bankruptcy Court to decide the merits of any claim. Youngevity objected. Ex. N. It explains that its claims against LCE seek redress for Youngevity's own competitive injury from LCE's own conduct; that the Debtor suffered no injury from the false advertising, which sold the Debtor's products; and that agency, joint-venture, and contributory liability are not veil-piercing theories. *Id.* ¶¶ 1–4, 21–30, 36–37, 40–45.

***The Utah action.*** The Utah action was filed in state court on May 29, 2026, by a former Perfectly Posh officer seeking to collect a default judgment against Perfectly Posh. *See generally* ECF 115-7. The complaint's veil-piercing claim would hold LCE liable for Perfectly Posh's judgment (*id.* ¶¶ 169, 177 & Prayer ¶ B), and its successor claim would hold Innov8tive liable as Perfectly Posh's continuation (*id.* ¶¶ 203–205). Thus, no count or prayer seeks to hold LCE liable for Innov8tive's conduct.

**C. LCE's Untimely Motion**

The Court entered the Order on September 30, 2026. ECF 108. LCE first raised reconsideration with Youngevity on October 26, 2026 through an email. Ex. G. The Parties met and conferred on October 28 and no one mentioned the twenty-eight-day deadline. Awerbuch Decl. ¶¶ 6–7. LCE did not ask for a stipulation or an extension. *Id.* Youngevity did not agree to any filing date or waive any deadline. *Id.* ¶ 7. LCE filed its motion on November 4, 2026, thirty-five days after the Order. ECF 115.

## III. LEGAL STANDARD

Reconsideration is "an extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000). "A motion for reconsideration

should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009). Such a motion "may *not* be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Kona*, 229 F.3d at 890 (emphasis in original). In this District, the movant must show "what new or different facts and circumstances are claimed to exist which did not exist, or were not shown, upon such prior application." CivLR 7.1(i)(1). The motion *must* be filed "within twenty-eight (28) days after the entry of the ruling, order or judgment sought to be reconsidered." CivLR 7.1(i)(2).

## IV. ARGUMENT

The Court should deny the Motion as untimely, because it does not raise any new relevant facts or law, and because transfer would not promote judicial efficiency.

### A. The Motion Is Untimely

#### 1. LCE missed the twenty-eight-day deadline

The Court issued the Order on September 30, 2026, so LCE's deadline to file the Motion was October 28. CivLR 7.1(i)(2). LCE filed the Motion on November 4. LCE's Motion invokes Civil Local Rule 7.1(i) and cites subsection (i)(1) but does not mention subsection (i)(2) or its deadline. Mot. at 5–6, 14.

Courts in this District deny reconsideration motions filed after the 28-day deadline. *See Eclipse Grp. LLP v. Target Corp.*, 2017 WL 2909717, at *2 (S.D. Cal. July 6, 2017) (denying motion for reconsideration filed twenty days after the deadline); *Hooper v. County of San Diego*, 2020 WL 5294672, at *1 (S.D. Cal. Sept. 2, 2020) (denying motion for reconsideration as untimely because "[t]he local civil rules require a motion for reconsideration be filed within 28-days after entry of the ruling."); *Airhawk Int'l, LLC v. Ontel Prods. Corp.*, 2020 WL 2306440, at *3 (S.D.

Cal. May 8, 2020) ("The Court finds that Airhawk did not file its motion for reconsideration within a reasonable time.").

LCE cannot rely on Rule 54(b) to excuse its late filing. The local rules "do not provide a timing exception under Federal Rules of Civil Procedure 54 as they do for Rules 59 and 60." *Hooper*, 2020 WL 5294672, at *1. Additionally, local rules that require a motion for reconsideration be filed within a certain number of days are enforceable in the Rule 54(b) context. *See F.T.C. v. Noland*, 2022 WL 901386, at *3 (D. Ariz. Mar. 28, 2022). Thus, the Court should not excuse LCE's untimeliness.

**2. The Court's conference rule does not excuse the delay**

LCE's declarant suggests that the Court's seven-day conference requirement explains the timing. Hampton Decl. ¶ 7. But Chambers Rule 3(A) requires that the conference take place "at least seven (7) days prior to the filing of the motion." That rule does not require a conference on day twenty-six. To file by the October 28 deadline, LCE needed only to confer by October 21. LCE first wrote to Youngevity on the afternoon of October 26. Awerbuch Decl. ¶ 3 & Ex. G. LCE thus created the conflict between the two rules.

A court in the Central District rejected the same excuse under an identical seven-day conference rule. The movant there complained that opposing counsel had not agreed to a conference until after the reconsideration deadline. The court rejected that argument because the movant "first requested a prefiling conference of counsel after his deadline to conduct one." *Madick v. Presidio, Inc.*, 2023 WL 4826187, at *1 (C.D. Cal. July 27, 2023) (citing C.D. Cal. L.R. 7-3 requiring a conference "at least seven days before the filing of a motion" and C.D. Cal. L.R. 7-18 requiring motions for reconsideration to be filed within 14 days after the challenged order).

So too here, LCE failed to ask Youngevity for a meet and confer within a timeline that would have allowed LCE to comply with this Court's Local Rules. LCE also could have asked the Court to extend the deadline before it expired. Fed. R. Civ. P. 6(b)(1)(A). It did not, and it has not since moved the Court for an extension under

the excusable neglect standard. Fed. R. Civ. P. 6(b)(1)(B). LCE cannot now make that showing for the first time in reply. *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) (on motion for reconsideration, "[t]he district court need not consider arguments raised for the first time in a reply brief").

The statement by LCE's declarant that "[t]he parties agreed that LCE would file the Motion the following week" (Hampton Decl. ¶ 7) is inaccurate to the extent it implies that Youngevity agreed to a filing date or waived the deadline. LCE announced its timing; no one mentioned the deadline; and Youngevity agreed to nothing. Awerbuch Decl. ¶¶ 6–7. Regardless, an agreement between counsel would have been without effect. In this Court, stipulations must be filed as joint motions, and joint motions "must be signed by the Court to have legal effect." Chambers Rule 6; *see* CivLR 7.2. Indeed, Rule 6(b) gives the power to extend a deadline to the Court, not the parties.

**B. LCE Offers No New Facts or Argument**

LCE must also show "what new or different facts and circumstances are claimed to exist which did not exist, or were not shown, upon such prior application." CivLR 7.1(i)(1). It cannot.

**1. The Court already rejected LCE's estate-ownership argument**

LCE claims that it "does not ask the Court to revisit arguments it has already considered." Mot. at 8:21. But the Motion's primary arguments repeat what LCE argued last time: that the estate claims part of this case, that the Bankruptcy Court must decide ownership, and that a single bankruptcy forum would avoid duplication. *Compare* ECF Nos. 94 at 9, 99 at 3–5, 9, 101 at 2–4 *with* Mot. §§ IV.C–D. For example, the Trustee's asserted interest was already before the Court in two declarations, ECF Nos. 95-3, 101-1, and LCE concedes it "was in the record." Mot. at 19:1–2. A complaint that the Court "did not address" an argument already in the record is a request to reargue it, which Local Rule 7.1(i)(1) does not permit.

Another judge in this District rejected the same tactic. In *EnSource*

*Investments LLC v. Tatham*, the defendants renewed a transfer motion after, as here, a defendant filed for bankruptcy. 2017 WL 3923784, at *3 (S.D. Cal. Sept. 7, 2017). The court treated the renewed motion as "effectively a motion to reconsider the Court's previous order based on new facts" and "decline[d] to reconsider arguments that were rejected in its prior order." *Id.* at *3 n.2. So too here, the Court should decline to reengage with arguments LCE made in its prior motion.

**2. Every "development" except the *Dalton* referral predates the Order**

LCE's purported "new" facts are the *Dalton* transfer (March 9, 2026), the Trustee's adversary proceeding (March 23, 2026), the Agreed Order on Dalton's claims (March 31, 2026), the *Dalton* referral motion (April 27, 2026, which LCE answered on May 11), the Utah action (May 29, 2026), and the Trustee's second amended complaint (September 8, 2026). Hampton Decl. ¶¶ 9–12 & ECF Nos. 115-2–7. LCE "acknowledges" that the adversary proceeding, the Agreed Order, and the *Dalton* transfer "came before the Order." Mot. at 15:13–14. Its own declarant confirms that only the referral "occurred after the Court entered the Order." ECF 115-1 ¶ 13. LCE's counsel appeared at the hearing on the Agreed Order and joined in advising the Bankruptcy Court that the parties had reached that agreement. ECF 115-3 at 2.

LCE failed to raise these issues with the Court before the Court issued the Order. LCE's declarant admits that "none of them was shown to the Court before it ruled." ECF 115-1 ¶ 13. The Court's rules permit supplemental filings with leave. Chambers Rule 3(E). Youngevity used that procedure in March 2026, with notice to LCE. ECF 105. LCE did not seek leave to supplement the record. Matters that "could reasonably have been raised earlier" cannot support reconsideration. *Kona*, 229 F.3d at 890; *see Frederick S. Wyle Prof'l Corp. v. Texaco, Inc.*, 764 F.2d 604, 609 (9th Cir. 1985) (affirming denial of reconsideration where the movant "conceded that the material in the new affidavits was available at the time of the original summary judgment hearing").

LCE also argues that it did not raise these issues with the Court before because these matters became significant "only after *Dalton* was referred to the Bankruptcy Court." Mot. at 15:15–16. But LCE knew for months that the referral was coming. The *Dalton* plaintiffs asked for referral on April 27, 2026, LCE filed its response on May 11, and the Trustee joined the request on June 8. ECF 115-4 at 3; Exs. A, H. The court's decision to grant a motion LCE had already briefed is not a new fact. Regardless, the Dalton referral is immaterial: Dalton does not ask whether LCE is liable as Innov8tive's alter ego for the conduct at issue here. *See infra* Part IV.C.2.

LCE's point about the Trustee's adversary complaint fails for the same reason. LCE says the adversary proceeding "took its operative form only on September 8, 2026, three weeks before the Order." Mot. at 15:17–18. Three weeks was ample time to ask leave to file a supplemental notice. LCE did not. Instead, six days after the Order, it moved to dismiss that complaint, calling the case "a garden variety preference case." Ex. B ¶ 22. More importantly, the Trustee has since asked to replace that complaint with one that drops her request for an order that LCE acted as Innov8tive's alter ego. *Compare* ECF 115-6 at Prayer ¶ c, *with* Ex. F at Prayer.

**3. The Dalton referral, which postdates the Order, does not merit reconsideration**

The *Dalton* referral is a routine Section 157 referral. It sends a case the plaintiffs chose to file in Texas, against Texas defendants under Texas fraudulent-transfer law, to the Texas bankruptcy court. ECF 115-4; Ex. H. Further, that referral covers only pretrial matters: "[w]here a jury trial is demanded and the parties do not consent, the bankruptcy judge shall withdraw from this case following the resolution of pretrial proceedings." ECF 115-4 at 6.

The referral also reflects what the Dalton case is: a judgment creditor's effort to collect a default judgment against Perfectly Posh by following Perfectly Posh's assets, which allegedly passed to the Debtor and then to PP Holdings. ECF 115-2 at 1–2; ECF 115-3 at 3; Ex. D ¶ 7. Tracing transferred assets and deciding which

creditors may reach them is what bankruptcy courts do, and the Trustee's claims in Dalton, to recover transfers of the Debtor's assets, are core proceedings. 28 U.S.C. § 157(b)(2)(H). This case is a competitor's jury action for false advertising that seeks no asset of the Debtor.

### C. LCE Misrepresents the Purportedly Related Proceedings

#### 1. LCE's positions elsewhere contradict its Motion

LCE tells this Court that "the alter ego question is now being litigated in four actions," that the Trustee's allegations "mirror Youngevity's," and that the estate "is already litigating the same alter ego question" in the Bankruptcy Court. Mot. at 8:9–10, 9:2–3, 20:12–13. In Texas, LCE says otherwise. It told the district court that the adversary proceeding, compared to the *Dalton* case, is "unrelated," "relates to entirely different transactions," "has nothing [to] do with Ann Dalton," should not be consolidated with *Dalton*, and that the bankruptcy issues are "tangential." Ex. A at 6–7. LCE told the Bankruptcy Court that the adversary proceeding is "a garden variety preference case" and that "[w]hether Grace or anyone else is an alter ego of the Debtor is irrelevant." Ex. B ¶¶ 17, 22. LCE filed that brief four weeks before it filed this motion. LCE cannot tell the Texas courts that these proceedings are all unrelated and tell this Court that they are all related.

Similarly, LCE told the Utah court that it does not belong in the Utah action. Three weeks before filing this motion, LCE told the Utah court that the successor count "pleads no successor liability against LaCore Enterprises." Ex. I ¶ 6. LCE asked to be dismissed from that case altogether. *Id.* at 1 & ¶ 8. It cannot now cite the Utah action as a reason to move this case while arguing that it does not belong in the Utah action.

LCE's own conduct in this Court recognizes that this Court is the proper forum to adjudicate whether LCE and Innov8tive are alter-egos. After Innov8tive filed for bankruptcy, LCE asked this Court to decide its motion to dismiss, representing that "Innov8tive's estate will not . . . otherwise be impacted." ECF 83

¶ 8. On October 31, 2025, it asked the Court to find, on the jurisdictional record, that LCE and Innov8tive "are not in an alter ego relationship." ECF 100 at 9. And when Youngevity asked the Bankruptcy Court for stay relief to liquidate its claims against both defendants in this Court, LCE objected only to timing, never contended that any claim against it belonged to the estate, and then agreed to an order that the stay "does not apply to LaCore Enterprises, LLC." Ex. S ¶¶ 4, 10–12 & at 4; Ex. M. LCE thus recognized that this Court is the place to decide whether LCE and Innov8tive are alter egos for purposes of jurisdiction.[3] That question is still pending here. *See infra*, Part IV.D.2.

**2. No other proceeding asks whether LCE is Innov8tive's alter ego for the conduct at issue here**

The Trustee's adversary proceeding concerns two loan repayments in April 2024. ECF 115-6 ¶¶ 13–15. Her proposed third amended complaint deletes the request for a declaration that LCE is the Debtor's alter ego. *Compare id.* Prayer ¶ c, *with* Ex. F Prayer. That alter ego count now treats Terry LaCore and LCE as alter egos of the two *transferees*, PP Holdings and LaCore Payment. It pleads alter ego "not as an independent cause of action but as a means of enforcing, against Terry and LaCore Enterprises, the liability of PP Holdings and LaCore Payment to return estate property under 11 U.S.C. § 550." Ex. F ¶ 68 & Prayer ¶ d. The complaint still describes Terry LaCore's control over the Debtor, but it uses those facts to plead insider status and to make Terry LaCore and LCE answer for the transferees' obligation. It seeks no ruling that LCE is the Debtor's alter ego, which is the issue in this case.

Similarly, *Dalton* does not relate to whether LCE and Innov8tive are alter egos. Instead, that case concerns Perfectly Posh's veil. Ex. C at 14–16. So does the

[3] LCE's position that this should be the forum to decide the alter-ego issue only changed after the Court denied its motion to dismiss and found that Youngevity made a prima facie showing that LCE was in an agency relationship with Innov8tive. *See* ECF 108.

Utah action. ECF 115-7 ¶¶ 169, 177. The Trustee has intervened in Dalton, but only to assert claims "arising from the transfer of assets from the Debtor to PP Holdings." Ex. D ¶ 7. Her complaint in intervention, which LCE's motion does not cite, does ask the Bankruptcy Court to determine that LCE is the Debtor's alter ego. But, unlike here, it is not limited to LCE and Innov8tive. It instead alleges a "unity of interest, ownership, and control among the Debtor, PP Holdings, LaCore, and Terry LaCore," and seeks to hold all defendants liable "as alter egos of the Debtor and of one another." Ex. J ¶¶ 51, 53. By contrast, the alter ego question here concerns only LCE and Innov8tive. And the complaint in intervention seeks "the value of the Transfer" of the Perfectly Posh assets, alleging that the corporate form "was used to move the Posh Assets beyond the reach of the Debtor's creditors." *Id.* ¶¶ 51, 53 & Prayer ¶ E. It pleads the Texas statutory standard, requiring "actual fraud on the Debtor's creditors." *Id.* ¶ 52 (citing Tex. Bus. Orgs. Code § 21.223(b)). That is a claim for harm to the Debtor, the loss of its assets. *See id.* ¶ 50. Youngevity's claims arise from false advertising that injured Youngevity. In short, once the Trustee's unopposed third amended complaint in the adversary proceeding becomes operative, no other case will ask whether LCE is liable as Innov8tive's alter ego for that conduct.

**3. The Trustee has not changed her position on forum**

LCE argues that the Trustee's support for this forum "reflects an arrangement she had just abandoned." Mot. at 16:18–20. The dates refute that. The Trustee withdrew her special-counsel application for Youngevity's counsel on October 16, 2025. Then, her counsel declared her opposition to transfer in this case on October 23, 2025. ECF Nos. 95-3, 95-4. She has not retracted that statement and she has not joined LCE's motion. LCE concedes as much. It acknowledges "her preference" about where this suit should proceed and "the estate's decision not to join this motion." Mot. at 16:23–27. Even now, the Trustee has not sought transfer. When she acted to protect the estate's asserted interest, she asked the Bankruptcy Court

only to decide which theories the estate owns. Ex. L at 5. LCE asks this Court for relief that the estate itself has not sought. The estate's largest creditor by far, Youngevity, which holds roughly 87% of the filed claims, wants this case to proceed here. Ex. N ¶ 14. LCE's professed concern for the estate is not disinterested. LCE and two of its affiliates have filed claims against the estate, so if Youngevity's claims against LCE became estate property, LCE would share in any recovery on claims against itself. *Id.* ¶¶ 2, 14. And, with the Trustee's agreement, the Bankruptcy Court authorized Youngevity to proceed here and "pursue claims which are not property of the bankruptcy estate to judgment against Innov8tive and LCE." ECF 89-1 at 2.

The arrangement between the estate and Youngevity's counsel, which LCE now uses to discount the Trustee's position, ended after LCE objected to it. Ex. K; ECF 95-4. LCE asked the Bankruptcy Court to prohibit the estate from participating in this case through Youngevity's counsel. Ex. K ¶¶ 13, 26. LCE cannot now point to the estate's absence in this case as a reason to transfer the case. LCE also argues that Youngevity "previously agreed to fund and jointly prosecute this action with the Trustee." Mot. at 21:22–25. But the proposed agreement recited only that "the Trustee asserts" that the alter ego theory belongs to the estate; Youngevity did not concede it. ECF 94-3 at 2. Regardless, the agreement was never approved and the Trustee withdrew the application. Youngevity has no agreement with the Trustee about this action today. Awerbuch Decl. ¶ 9. And in opposing the arrangement, LCE told the Bankruptcy Court that Youngevity was funding "litigation it already planned to pursue" and that "it is impossible for Youngevity to prosecute its claims against LCE without also prosecuting claims against the Debtor." Ex. K ¶¶ 14, 28. In LCE's own words, these are Youngevity's claims.

**D. The Bankruptcy Court Will Decide Ownership, Which Does Not Warrant Transfer or a Stay**

**1. The Bankruptcy Court will decide who owns certain theories, not where the claims are tried**

The Trustee has now asked the Bankruptcy Court to decide whether some of Youngevity's theories belong to the estate. Ex. L. Her motion seeks one ruling: a declaration that the "alter ego, vicarious liability, and veil-piercing claims asserted in the Lawsuit to hold LaCore Enterprises, LLC liable for the conduct of the Debtor are property of the bankruptcy estate." *Id.* at 5. She does not ask to transfer this case or for the Bankruptcy Court to try any claim, even one it finds the estate owns. Youngevity opposed her motion, Ex. N, and the Bankruptcy Court will decide it. Youngevity has also asked the Bankruptcy Court to confirm that, if any theory belongs to the estate, nothing requires that it be litigated there, and the Trustee may pursue it in this case. Ex. N ¶¶ 47(e), 50.

The Bankruptcy Court can make that ruling while this case stays here. It retained jurisdiction to interpret and enforce its stay-relief order. ECF 89-1 at 3. "If any party believes [the bankruptcy judge's] order should be clarified or altered, this request must be addressed to [the bankruptcy judge]." *Flores v. DDJ, Inc.*, 2015 WL 738029, at *4 (E.D. Cal. Feb. 20, 2015) (quoting prior order). If the Bankruptcy Court finds that a theory belongs to the estate, the stay-relief order will not permit Youngevity to pursue it unless otherwise modified. ECF 89-1 at 2. Either way, an estate's interest in a lawsuit "only requires that the lawsuit be adjudicated somewhere, not that the lawsuit be adjudicated by the bankruptcy judge handling the bankruptcy case." *In re Mitchell*, 206 B.R. 204, 213 (Bankr. C.D. Cal. 1997) (denying debtor's request to transfer his lawsuit to his bankruptcy court). Regardless, Youngevity will keep most of the claims in this case. The Trustee concedes the direct claims, Ex. L ¶ 10, and claims only theories that would hold LCE liable "for the conduct of the Debtor," *id.* at 5, not LCE's liability for its own false advertising

under Count One.

**2. The alter ego facts are relevant in this case regardless of whether Youngevity owns an alter ego claim**

Even if the estate owns an alter ego claim in this case, whether LCE and Innov8tive are alter egos is nonetheless relevant to jurisdiction. LCE disputes personal jurisdiction. Its first affirmative defense, noting that the Court "declined to reach Youngevity's alter ego and joint venture theories," preserves the defense "for all purposes, including trial and appeal." ECF 118 at 58. A plaintiff who defeats a motion to dismiss with a prima facie showing "must still prove the jurisdictional facts at trial by a preponderance of the evidence." *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 n.2 (9th Cir. 1977). Youngevity may meet that burden with the theories the Court has not yet reached, including alter ego. That jurisdictional question differs from the veil-piercing liability the Trustee pleads under Texas law. It asks whether Innov8tive's California contacts may be attributed to LCE under the Ninth Circuit's due-process standard. *See Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1021 (9th Cir. 2017). LCE concedes as much: it says that if Youngevity's allegations "serve only to establish jurisdiction," they may go forward. Mot. at 18:24–26. Because LCE has made jurisdiction a trial issue, Youngevity must be able to litigate that issue in this case under appropriate Ninth Circuit law. A stay or a split of the alter ego theory would therefore delay this case without sparing anyone the litigation LCE says it wants to avoid.

**3. The Section 1404(a) factors still weigh against transfer**

Section 1404(a) permits transfer "[f]or the convenience of parties and witnesses, in the interest of justice." The Court weighed the Section 1404(a) factors and found that they do not favor transfer. ECF 108 at 13–17. LCE does not argue that the Court misjudged any factor. It concedes that "[t]he presumption in favor of Youngevity's choice of forum remains," Mot. at 21:20 and asks the Court to add one consideration to the balance: "[r]elated litigation and the risk of inconsistent results."

*Id.* at 20:1. However, as with the bankruptcy filings in *EnSource*, the related proceedings "do not significantly bear on any of these factors" because they "are separate matters from this case, and they do not affect the burden of litigating this case in any particular venue." *EnSource*, 2017 WL 3923784, at *3. Every factor comes out as it did on September 30, and several now weigh more heavily against transfer.

***Related litigation.*** LCE's principal argument is that related litigation in the transferee forum tips the balance in favor of transfer. Mot. at 19:12–21:18. The authority LCE cites concerns actions "involving precisely the same issues." *Continental Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26 (1960). LCE invokes the "positive effects" of "possible consolidation," Mot. at 20:14–17 (quoting *A.J. Indus., Inc. v. U.S. Dist. Ct.*, 503 F.2d 384, 389 (9th Cir. 1974)), and says "[t]he interest of justice favors a single forum," *id.* at 23:8. But six months ago, LCE told the Eastern District of Texas that it "disagree[d] that the unrelated Preference Action brought by the Trustee should be consolidated with" *Dalton*. Ex. A at 7. LCE cannot oppose consolidating the two Texas proceedings with each other while arguing that this case must be transferred so it can be heard alongside both.

Further, contrary to LCE's argument, the other cases are not related and do not pose a risk of inconsistent results. As explained above, no other case is determining whether Innov8tive and LCE are alter-egos under similar facts to this case. Moreover, Youngevity is not a party to *Dalton*, to the adversary proceeding, or to the Utah action. Nor do those actions share issues with one another or with this case. Dalton is a judgment creditor's effort to collect from Perfectly Posh by tracing its assets. The adversary proceeding is a preference action over two loan repayments in 2024. This case is a competitor's false-advertising suit over patch products, brought under the Lanham Act and California law. The parties, transactions, governing law, and relief all differ. Nor should this Court rely on *Dalton*'s transfer of related claims (Mot. at 21:7–18). There, the plaintiffs themselves asked to move

a case they had filed in Texas, against Texas defendants under Texas law, from one Texas district to another. ECF 115-2.

Efficiency favors this forum deciding the relationship between LCE and Innov8tive. This Court has addressed that relationship repeatedly since 2022, through two motion to dismiss orders, an appeal, a remand for jurisdictional discovery, four depositions, written discovery, and two rounds of briefing. ECF Nos. 15, 22, 34, 50, 61, 73, 93, 96, 100, 108. Under Judge Goddard's guidance, the Parties are now in the midst of merits discovery. ECF Nos. 112, 119.

By contrast, the adversary proceeding is still at the pleading stage. Its motion to dismiss is set for hearing on December 1, 2026. Ex. O.

***Plaintiff's choice of forum.*** This factor still weighs against transfer. ECF 108 at 14. LCE concedes that the presumption "remains," but asks the Court to weigh it "against the interests of the estate." Mot. at 21:20–22. The estate, however, has not asked for transfer. The Trustee told this Court that she opposes it, and she has not retracted that position. ECF 95-3 ¶ 6; *see* Part IV.C.3. LCE still has not made the "strong showing of inconvenience" required to upset Youngevity's choice. *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). Thus, "there are no grounds on which to consolidate this case with the bankruptcy court's adversary proceeding, the Plaintiffs chose California as a forum, and there are no compelling new circumstances supporting transfer." *Sundance Image Tech., Inc. v. Inkjetmall.com, Ltd.*, 2005 WL 8173273, at *1 (S.D. Cal. Apr. 19, 2005).

***Convenience of the witnesses.*** This factor is neutral or weighs slightly in favor of transfer. The Court earlier found that it favored transfer because "it seems that most of the witnesses are based in Texas," although LCE had not identified them. ECF 108 at 15. LCE still does not "name the witnesses, state their location, and explain their testimony and its relevance." *Id.*; *see* Mot. at 22:25–23:3. Its only new point is that, without transfer, "the same LCE and Innov8tive witnesses would be deposed and examined in more than one forum." Mot. at 23:1–3. But that

argument is a red herring because transfer would not reduce the number of those depositions. Youngevity is not a party to the other cases and has examined no witness in them. Testimony taken in those cases was not taken "between the same parties, or their representatives or successors in interest," so Youngevity would still need its own depositions wherever this case is tried. Fed. R. Civ. P. 32(a)(8).

Moreover, those depositions impose little burden. The Court ordered the jurisdictional depositions to proceed remotely, ECF 34, and LCE did not dispute that the parties can "conduct proceedings remotely." ECF 108 at 15. Witness location carries less weight for that reason. *See Zhluktsionak v. Reddit, Inc.*, 2026 WL 310176, at *3 (N.D. Cal. Feb. 5, 2026) (witness convenience "at least neutral" although fact witnesses were in Washington, because "modern technology allows remote participation in depositions").

***Neutral factors.*** The Court found the convenience of the parties, ease of access to evidence, compulsory process, and local interest neutral. ECF 108 at 14–16. LCE does not argue that any of them has changed.

***Familiarity with the governing law.*** This factor still weighs against transfer. ECF 108 at 15–16. Youngevity's unfair-competition claims arise under California law. *Id.* at 15. None of the other proceedings applies California law. The Trustee pleads that "Texas law governs" her veil-piercing theories and relies on the Texas veil-piercing statute, which, in the cases it covers, requires "actual fraud . . . primarily for the direct personal benefit" of the defendant. Ex. F ¶¶ 48, 69–70; Ex. C at 13 (quoting Tex. Bus. Orgs. Code § 21.223(b)). The Utah claims arise under Utah law. Ex. I at 1–3. And referral to the Bankruptcy Court, as LCE proposes (Mot. at 22:17–20), would bring no relevant expertise. Like the suit in *Mitchell*, this case "does not involve any issue of bankruptcy law," and the district court "is better qualified to decide these issues" than a bankruptcy court. 206 B.R. at 213.

***Court congestion.*** This factor still weighs against transfer. The Eastern District of Texas had 888 pending cases per judgeship, compared with 466 in this

District. ECF 108 at 17. LCE argues instead that the transferee court could refer this case to the Bankruptcy Court, so that "the district court's caseload would not control the pace of pretrial litigation." Mot. at 22:17–20. But referral would add a court, not remove one, because the bankruptcy judge would have to withdraw for any jury trial. ECF 115-4 at 6; *see* 28 U.S.C. § 157(e).

Transfer also would not produce the single forum LCE promises. Both sides have demanded a jury. ECF Nos. 38, 118. A bankruptcy judge may conduct a jury trial only with the express consent of all parties. 28 U.S.C. § 157(e); *see Mitchell*, 206 B.R. at 213. Youngevity does not consent. Nor could a bankruptcy judge enter final judgment on claims against a non-debtor that are at most "related to" the bankruptcy, absent consent. 28 U.S.C. § 157(c). LCE itself told the Texas court that none of the claims against the non-debtor defendants in *Dalton* is core. Ex. A at 4–7. Nor is there any established mechanism for merging a bankruptcy adversary proceeding with a civil jury action against non-debtors. *See Sundance Image*, 2005 WL 8173273, at *3 (finding no "statutory or precedential basis for consolidating an adversary proceeding under a bankruptcy court's jurisdiction with a civil trial against non-debtors before a district court"). In short, the factors that weighed against transfer still do, the neutral factors remain neutral, and the one factor that favored transfer has lost much of its force. LCE still has not carried its burden to upset Youngevity's chosen forum. *See* ECF 108 at 17.

**4. Section 1412 still does not apply**

LCE concedes that the Court has considered and rejected the argument that Section 1412 makes transfer appropriate. Mot. at 23:25–26. In doing so, the Court relied on *EnSource*. ECF 108 at 13. That another district court granted a plaintiff's *own* request to move its case within Texas is not an intervening change in controlling law. *See Marlyn*, 571 F.3d at 880. And even if Section 1412 applied, it would not support transfer. Courts in this Circuit have declined to apply that Section to transfer a prepetition lawsuit to the bankruptcy forum. *See Mitchell*, 206 B.R. at 212–13

(alternative holding) (denying debtor's Section 1412 motion to transfer his prepetition suit to the district where his bankruptcy was pending); *EnSource*, 2017 WL 3923784, at *4 (alternatively declining transfer where only one of seven defendants had filed for bankruptcy, because "the case may never be appropriate for referral to the bankruptcy court").

**5. The Court should not reimpose the stay**

The Court lifted the stay after considering the same arguments LCE makes in the Motion. ECF 99; ECF 108 at 17–18. LCE itself agreed in the Bankruptcy Court that the automatic stay "does not apply to LaCore Enterprises, LLC." Ex. M.

In yet another attempt to delay this case, LCE now asks this Court to impose, as a matter of discretion, the stay it agreed does not apply to it. The prejudice to Youngevity has only grown. This case, filed in May 2022, was stayed for nearly twenty months, from February 3, 2025 to September 30, 2026. ECF Nos. 82, 108. Before the stay, the final pretrial conference was set for February 2026. ECF 70. Youngevity was only able to serve its first merits discovery on LCE on October 28, 2026. Awerbuch Decl. ¶ 8. Delay of this length creates a real "danger of lost evidence." *In re PG&E Corp. Sec. Litig.*, 100 F.4th 1076, 1087 (9th Cir. 2024). That danger is concrete here. Innov8tive has shut down. LCE's counsel has refused to accept service of subpoenas for any of LCE's affiliates or the individuals Youngevity identified, including LCE's own officers and two witnesses Youngevity deposed in jurisdictional discovery, and other witnesses have become harder, if not impossible, to reach. Awerbuch Decl. ¶¶ 10–11 & Ex. P. Innov8tive's records appear to remain under the control of LCE, the party seeking delay. *Id.* In *PG&E*, the Ninth Circuit vacated a stay of claims against non-debtor defendants pending the debtor's bankruptcy because the district court had not weighed that prejudice. *PG&E*, 100 F.4th at 1087–88. It also reaffirmed that, in *Lockyer*, a stay was improper where, among other considerations, "the proceeding in the bankruptcy court [was] unlikely to decide, or contribute to the decision of, the factual and legal issues before the

district court." *Id.* at 1087 (citing *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1113 (9th Cir. 2005)).

No bankruptcy proceeding will decide whether anyone engaged in false advertising, or whether LCE is liable for it. The Trustee's motion asks only who owns certain theories. A party seeking a stay "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else." *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936). LCE cannot. "[B]eing required to defend a suit, without more, does not constitute [prejudice]." *PG&E*, 100 F.4th at 1087 (quoting *Lockyer*, 398 F.3d at 1112). Its only claimed burden is purportedly litigating the same facts in multiple venues, but, even if that is true, it must litigate those facts here anyway for jurisdiction. *See Matthews v. Lemonade Ins. Co.*, 809 F. Supp. 3d 1076, 1085 (S.D. Cal. 2025) (denying stay where, "[r]egardless of the outcome" of the other case, the defendant "will still have to produce discovery").

LCE says a stay would avoid litigating "theories that the Trustee contends Youngevity lacks standing to pursue." Mot. at 24:14–16 (citing ECF 89-1 at 2). The cited order does not say that. It records that the Trustee "agrees to the relief" Youngevity requested. ECF 89-1 at 2. Nor does the Trustee's pending motion justify a stay. The Bankruptcy Court can rule on it while discovery proceeds, and a stay pending that ruling, and any appeal, would hold the entire case, including the claims the Trustee concedes, to an unpredictable timetable. *See Dependable Highway Express, Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066–67 (9th Cir. 2007) (reversing stay where it was not shown that the other proceeding would conclude within a reasonable time).

**6. At most, any accommodation should be narrow**

If the Court concludes that the Trustee's motion warrants some accommodation, it should track that motion. The Court could deny transfer and a stay, let all claims and discovery proceed, and direct that no judgment holding LCE

liable on a theory the Trustee claims (alter ego, agency or vicarious liability, or Count Two as against LCE) be entered until the Bankruptcy Court rules. *See* Ex. L at 2–5. Claims the Trustee does not assert should proceed without restriction. *Id.* ¶ 10. Unlike LCE's request to stay the alter ego theory (Mot. at 24:21–24), this would not halt discovery that LCE's jurisdiction defense requires anyway, and it would cost the estate nothing. Youngevity also does not object to LCE's request to clarify that the Order does not authorize prosecution of claims the Bankruptcy Court determines are estate property. Mot. at 24:22–24. The stay-relief order already says as much. ECF 89-1 at 2–3. Any clarification should not limit discovery or litigation of the facts underlying those theories. Youngevity has asked the Bankruptcy Court to say the same. Ex. N ¶ 47(d). *See* Part IV.D.2.

## V. CONCLUSION

The Court should deny LCE's Motion for Reconsideration in its entirety. In the alternative, any relief should be limited as described in Part IV.D.6.

DATED: November 25, 2026

Respectfully submitted,

YOUNGEVITY INTERNATIONAL, INC.

By: *<u>/s/ Eric J. Awerbuch</u>*
Eric J. Awerbuch
eawerbuch@youngevity.com
*Attorney for Plaintiff*